Eastern Dis.
April, 1841.

## HOFFMAN vs. LAURANS ET AL.

HOFFMAN
vs.
LAURANS ET AL.

Builders who contract with tenants for the repair and alteration of the leased premises, and have their contract recorded, have no lien or privilege on the property under lease.—There is no privity between the builder and owner of the leased property; and the mere consent given in the lease to make the alterations on the premises, renders the lessor in no way liable to the builder.

The lessor is not bound to pay for improvements or alterations made on the leased premises by the tenant when they are not of any advantage to him.

No mortgage or privilege can be established or extended by analogy to similar cases where it is allowed. It is only given by express law.

This is an action against Pierre Laurans as owner, and Stansbury & Tensfield a firm doing business, and lessees of Laurans's house on the corner of Magazine and Gravier street, to render the former liable with the latter for their debt due by note to certain builders, which was transferred to the plaintiff. He alleges that Laurans leased his house to the other defendants, who employed Messrs. Slack & Smallidge, builders to make repairs and alterations on the leased premises. Their contract was for $2000 and recorded. Stansbury & Tensfield gave their note for $1500 the balance due on the contract, and the plaintiff alleges that the builders' privilege attaches to the note in his hands and operates as a lien or privilege on the property.

The defendant, Laurans, resisted this demand, on several grounds. There was a judgment in favor of Laurans, and the plaintiff appealed.

*Hoffman,* in propria persona and appellant.

*Briggs,* for the appellee.

*Morphy, J.* delivered the opinion of the court.

Stansbury and Tensfield having rented of defendant a house and lot at the corner of Gravier and Magazine streets, became desirous of converting the premises into large billiard rooms ; and they obtained his permission to do so; they engaging to pay

an additional rent and to make at their own expense the neces-
sary improvements and alterations, and defendant agreeing to
contribute $416 towards the cost of the same, and to extend
the lease from three to five years. In November, 1836, the
lessees accordingly contracted with Slack & Smallidge who
undertook for $2000 to make the proposed improvements, and
who caused their contract to be registered in the office of the
recorder of mortgages: of the stipulated sum of $2000, there
yet remains unpaid $1500 the amount of a note given to the
builders by Stansbury and Tensfield, but which they suffered
to be protested for non-payment at maturity. In the begin-
ning of 1838, the tenants having failed to pay their rent,
defendant brought suit against them and had the lease annul-
led. The tenants on the other hand instituted an action for
damages against defendant for having illegally, as they al-
leged, broken up their coffee house and deprived them of
large rents they were receiving from the sub-tenants of the
upper story. In his answer to this suit the defendant refers to
the builders' claim which Stansbury and Tensfield had ne-
glected to pay. A compromise however took place and the
suit in damages was discontinued on defendant's paying to his
former tenants a sum of $700. The plaintiff having become
the holder of the note of $1500 now claims its amount of de-
fendant, and a privilege on his property for the increase of
value resulting from the improvements put upon it. Having
failed in the court below, he appealed.

    There being no privity between defendant and the builders,
it is not easy to perceive what right they had to record their
agreement with the lessees, and how such recording can
operate as a lien or privilege on his property. The mere con-
sent he gave in the lease that the proposed alterations might
be made on the premises in no way renders him a party to
the subsequent contract with the builders. It appears to us on
the contrary that the latter were thereby fully informed that
defendant was not to be liable for any thing beyond the sum
he actually agreed to advance to his tenants. It is said that as

EASTERN DIS.
April, 1841.

HOFFMAN
vs.
LAURANS ET AL.

Builders who
contract with
tenants for the
repair and alte-
ration of the
leased premises
and have their
contract record-
ed, have no lien
or privilege on
the property
under lease.
There is no
privity between
the builder and
owner of the
leased property,

EASTERN DIS. these improvements have been made with the knowledge of
April, 1841. defendant and on the faith of a long lease, equity forbids that

HOFFMAN he should come into the immediate enjoyment of them with-
vs.
LAURANS ET AL. out assuming the obligation of the lessees to the builders.

and the mere
consent given in From the testimony it is by no means so obvious that these
the lease to improvements, although amounting to $2000 were of any
make the alte-
rations on the advantage to defendant, or that he was upon the whole a
premises, ren- gainer by the transaction.   These improvements were made to
ders the lessor
in no way liable suit the convenience and purposes of the particular tenants
to the builders. who were to keep the property at a high rent for five years;

The lessor is all the partitions, doors, chimney pieces, &c. standing in the
not bound to house were taken down.   It is the opinion of one of the wit-
pay for im-
provements or nesses that although a new building has been placed on the
alterations
made on the premises, the alterations have been productive of injury rather
leased premises
by the tenant than benefit to defendant, as the property is no longer habit-
when they are
not of any ad- able, and can now be let only for billiard rooms or for purposes
vantage to him. which do not require the conveniences of a dwelling house,
and that the future rent will be rather diminished than increas-
ed by the change.

It is next urged that as the compromise between defendant
and his tenants was entered into with a full knowledge of the
claim of the builders, it must have been with the understand-
ing that it was to be satisfied by defendant independent of the
$700 paid to Stansbury and Tensfield.   If such had been the
fact, the plaintiff could easily have proved it by the testimony
of the latter or of Evariste Blanc, who made the settlement
for defendant.   In the absence of any evidence on this head,
we would rather believe that the $700 which Laurans paid to
compromise the matter was accepted by the tenants, because
together with the $416 already received and the arrears of rent
due by them, it made up the expense of $2000 they had in-
curred for the improvements.   As to the builders, when they
treated with Stansbury and Tensfield they well knew that they
were mere tenants and could create by their acts no charge or
lien on defendant's property; they knew they were to look for
their payment to them alone, and it is only ten months after

the date of their contract, and when they began to fear that they might suffer by their incautiousness that they thought of having it recorded as a lien on the property. The mention made by defendant of this recorded claim in his answer to the action of his tenants has been urged as a confession that it was binding upon him. We cannot view it in this light; it appears to us rather a complaint on his part that the lessees had failed to pay the builders, as they had engaged to do, and had thus subjected him to difficulty and inconvenience on account of the recording of their claim.

The appellant has called our attention to article 591 of the Louisiana Code :—It provides that "an undertaker or workman who has made at the instance of the usufructuary any building or improvement on the property and who is unpaid at the expiration of the usufruct, preserves his lien on the property and can enforce it against the owner." We are called upon to extend by analogy the same privilege to lessees for improvements made during the lease ; this we. would by no means feel authorized to do, even if the cases were as analogous as the counsel represents them to be ; for no mortgage or privilege can exist unless given by express law ; La. Code, arts. 3152, 3280. But the right of an usufructuary differs materially from that of a lessee. The one is a real right, a kind of ownership, subjecting the possessor to the payment of taxes and repairs ; susceptible by law of hypothecation, and conferring generally a life-estate, which the usufructuary can at any time renounce or abandon, or transfer at his will and pleasure. The other is a right strictly personal giving to the lessee only the use of the property and conferring neither the legal possession nor any proprietary interest in it. 3 Touillier, No. 387, and seq.: articles 500 and 2697 of the La. Code have also been relied on, but in our opinion they have no direct bearing on the case before us; and cannot assist the plaintiff when he seeks to enforce a privilege so adverse to or rather destructive of the right of property. The doctrine he contends for would besides open a wide door to fraud and collusion

EASTERN DIS.
April, 1841.

HOFFMAN
vs.
LAURANS ET AL.

*No mortgage or privilege can be established or extended by analogy to similar cases where it is allowed. It is only given by express law.*

EASTERN Dis. between lessees and builders; and would place the owner
April, 1841. completely at their mercy. A satisfied contract might be
TURNER suffered to remain recorded against the property without the
vs.
LATORRE ET AL. possibility of proof on the part of the lessor or owner that the
debt created for improvements has been extinguished.

The judgment of the Commercial Court is therefore affirm-
ed with costs.