2   599
49  628
2   599
115 872

## LEE v. HIS CREDITORS.

The extreme term for the duration of privileges for work done, or materials furnished, for the construction of a steamer, is sixty days, where the boat has been for that length of time engaged in making trips between this port and those of other States.

Privileges on steamers or other vessels established by the laws of other States, unless expressly recognised by our laws, will not be enforced here. *Per Curiam:* The framers of our Code did not intend to confine their legislation on the subject of the privileges on steamers' or other vessels to such as are owned in this State; they laid down general rules as to the distribution of the proceeds of such vessels, without regard to their origin, or the place of their owners' residence.

A nation within whose territory personal property is found, has as entire jurisdiction over it while there, as it has over immovable property. Its exercise, for all purposes, is a question of policy.

Privileges established by the laws of another State for work or labor furnished for the construction of a steamer form no part of the contract itself, and cannot follow the property into this State, when no such privilege exists here.

In the distribution of insolvent estates, no distinction is recognised among creditors dependent on the place of origin of the debts. The distribution is made as of the proceeds of a common pledge, according to the order of privileges and mortgages established by the Civil Code.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. The facts of this case are stated in the opinion of the court.

*Wray* and *Hoffman*, for the appellant. The main question in this case is—Shall the liens granted under a foreign law be enforced by the courts of Louisiana, in an insolvent proceeding, to the prejudice of liens acquired under our laws, and to the injury of ordinary creditors? The court *a quâ* considered that the lien under the law of Kentucky, was part of the contract: that the place of the contract was Kentucky; and that it was bound to give the same effect to the contract as if the suit was to be tried in Kentucky.

1st. We contend that New Orleans was the place of contract. The drafts are all payable in New Orleans. The contract was to be performed here, and the parties evidently had in view the laws of Louisiana, in reference to the execution of it. *Contraxisse unusquisque in eo loco intelligitur, in quo ut solveret se obligavit.* Dig. lib. 21, tit. 2, l. 6. Story on Conf. of Laws, § 233, 270. *Prentiss* v. *Savage*, 13 Mass. 23. 2 Kent's Com. 459.

2d. Should Kentucky be considered the *locus contractus*, still its laws can have no extra-territorial force and effect. Remedies are to be governed by the *lex fori*, not by the *lex loci.*

3d. The principle that the *lex loci* as to privileges is to govern, does not hold where there are domestic liens to be enforced. Story on Conf. of Laws, § 323; and Chief Justice *Marshall*, in *Harrison* v. *Sterry et al.* 5 Cranch 289, says: " The law of a place where a contract is made is generally speaking the law of the contract; i. e. it is the law by which the contract is expounded. But the right of priority forms no part of the contract. It is extrinsic, and rather a personal privilege dependent on the law of the place where the property lies, and where the court sits which is to decide the case." See Huberus, de Con. Leg. tom 2, lib. 1, tit. 3, §2. Idem. tom 2, lib. 1, tit. 3, §11. " It is also requisite," says Fonblanque, " to give a binding force to a contract entered into in another country, that it does not violate the rights of persons not parties to it. To this qualification of the rule may be referred those cases in which courts of justice refuse to enforce contracts entered into abroad, which, though there valid, either violate some moral duty, or are inconsistent with a positive right accrued to a third person under the law of the country in which such inconsistent claim is sought to be made available." Fonblanque's Equity, 444. Also the case of *Smith* v. *Union Bank*, 5 Peters, 518.

LEE
*v.*
CREDITORS.

4th. The court *a quâ*, considering itself bound by the comity òf nations, upholds these foreign liens. But the comity of nations becomes inoperative, when the *lex loci* and the *lex fori*, as to conflicting rights acquired under each, come in direct collision. Kent's Com. 2 vol. 461. Story on Confl. of Laws, § 327. *Saul* v. *His Creditors*, 5 Mart. N. S. 596. By the law of Louisiana privileges on steamboats and vessels are extinguished in sixty days from their creation, if the vessel perform her usual voyage. C. C. 3204, 3211, 3212. 10 La. 75. Under our law the opponents can claim as ordinary creditors only.

5th. No nation is bound to recognise or enforce any contracts which work positive injury or inconvenience to its citizens, or those claiming under its laws. *LeBreton* v. *Nouchet*, 3 Mart. 68. *Oliver* v. *Townes*, 2 Ibid. N. S. 93. Privileges are only allowed when expressly granted by law. C. C. 3152. 17 La. 443. 18 La. 73. Under art. 3204, furnishers of materials and workmen employed in the construction, &c. have a privilege, if the vessel has never made a voyage; and of course no privilege if she has made a voyage. *Terry* v. *Terry*, 10 La. 75. *Grant* v. *Fial*, 17 La. 158. Under the law, and its judicial interpretation in this State, there can be no privilege on ships and vessels after the lapse of sixty days, and yet this court is called on to recognise a privilege under circumstances in which the law of the State declares that no privilege shall exist. The injury to commerce which the recognition of these foreign liens would cause is manifest. The purchase and sale of ships and vessels would be at once arrested. *Oliver* v. *Townes*, 2 Mart. N. S. 93.

6th. The liens sought to be enforced, are extinguished by prescription. C. C. 3244, § 4. Prescription is part of the remedy, and is governed by the *lex fori*. C. P. art. 13. Under art. 3204, § 8, builders have a privilege if the vessel has never made a voyage, which is lost if she has made a voyage in the name of a purchaser. Art. 3210. A voyage is a departure from one port and arrival at another, or the being out sixty days. Art. 3211. It is wholly inconsistent with these provisions of law, that the creditor can retain his privilege, if he give a credit, as was done in this case, of 3, 6, or 12 months. The term of sixty days is now settled to be the limit of the privilege on steamboats navigating to distances which do not come within the meaning of the term voyage. This is the judicial interpretation of the law, and leans in favor of creditors. See *Terry* v. *Terry*, 16 La. 6. *Shirley* v. *Fabrique*, 15 La. 140.

*Mott*, contrâ, cited *Whiston* v. *Stodder*, 8 Mart. 95, 133. *Sabatier* v. *Creditors*, 6 Mart. N. S. 585. *Ohio Insurance Co.* v. *Edmondson*, 5 La. 298. Story, Confl. Laws, § 401, *et seq.*

The judgment of the court was pronounced by

EUSTIS, C. J. This case was determined in the District Court, after a very elaborate examination of the subject involved in it on the part of the district judge, who has given us the benefit of his views in an able and well prepared written opinion. The decision of the district judge was given in favor of certain claims for work done and materials furnished in building the steamer *Old Hickory*, in Kentucky, in preference and adversely to an asserted privilege of the vendor. The party representing this privilege has appealed, and the case has been argued at bar principally with respect to the relative rank of the privileges claimed by each.

By a law of the State of Kentucky, workmen and material-men have a lien or privilege on the boat, which may be enforced at any time within twelve months, even against a purchaser without notice; and steamers, indebted to that class of creditors, coming within that commonwealth, are subject to the lien or privilege. The district judge considered all the parties before him as non-residents, and the enquiry was not embarrassed with the distinction between the rights of domestic and foreign creditors.

It is contended by the counsel who argued the case for *Handy*, representing the vendor's privilege, who is the appellant, that in a *concurso* or litigation of all the creditors of an insolvent, opened in this State, a privilege existing under the law of another State, cannot be recognised or enforced by our courts. It is

rather singular that this question has never been determined by the Supreme Court of this State, and we are not aware of its ever having been presented to the consideration of the court of the last resort, although in the courts of the first instance scarcely a month passes in the business season without the seizure or sale of a vessel or steamer, and the judicial distribution of the proceeds among the conflicting claims of creditors.

We deem it first necessary to ascertain what privileges the appellees, *Glover* and others, would have under our laws, supposing their contracts to have been made, their work done, and materials furnished the boat, in the State of Louisiana. The steamer made her first trip from Louisville, in December, 1845. From her arrival in New Orleans, until she was attached and surrendered, in May, 1846, she was engaged in the Nashville trade. She had been making voyages during five months, before the appellees attempted to enforce their privilege.

We consider that the extreme term for the duration of privileges on steamers, when engaged in making voyages between this port and those of other States, is sixty days. The subject was first brought to the consideration of the Supreme Court, in 1836. Vide *Terry* v. *Terry*, 10 La. 79. In the case of *The Fulton Company* v. *Wright & Harris*, decided in the year, 1837, the judge of the late first judicial District Court, thus expressed himself on this subject :

" I have on various occasions expressed my difficulties on the subject of administering the law relative to privileges on vessels. The articles of our Code on this matter are taken from the French Code of Commerce, and some of them cannot be applied, for they contain expressions which refer to a system not known with us. The article 192, nos. 6 and 7, refers to a system of registering claims against vessels with the clerk of the tribunal of commerce, within ten days after the departure of the vessel; and other articles of that Code are framed with a view to that registry, viz : those describing the voyage, &c. The very language of these last articles we have adopted, while the system of the registry of claims, which makes them reasonable and practicable, is unknown to us. I consider that the term *voyage* does not apply to boats on rivers, lakes, &c. Either *then* there is no privilege, or it must receive a reasonable limitation. I have adopted the period of sixty days, by analogy to art. 3212, as the period within which these claims must be asserted, where there are conflicts of rights."

A motion was made for a new trial, on which this question was again considered, and we believe since that case it has been held to be settled, with the general concurrence of the bar. This interpretation received the sanction of the Supreme Court in *Shirley* v. *Fabrique*, 15 La. 140. We therefore conclude that, under our law the appellees had no privilege on the proceeds of the steamer at the time of the attachment.

Being aware that our courts had frequently had this subject before them, we directed an examination to be made of the cases decided by the late Commercial Court of New Orleans, distributing the proceeds of steamers among the different privileged creditors.

In the case of *Berthoud* v. *Wm. T. Gray* and *Steamer Caledonia*, no. 6807 of the suits of that court, Judge Watts, who decided the case of *The Fulton Company* v. *Wright & Harris*, after an elaborate review of his whole course of decisions on the subject of privileges during a period of twelve years from the

time he had presided in the District and Commercial Courts, touching on the question of privileges given by the laws of other States, says:

" Another principle which I have found it neccessary to adopt is, that privilege is governed by the law of the *forum*, and not of the place where the debt was contracted. In the distribution of the proceeds of a steamboat which came from Pittsburg, claims for privilege, the duration of which was one year under the laws of Pennsylvania, Ohio, Kentucky, Tennessee, Mississippi, and Louisiana, were presented. Such a system was manifestly impracticable, and the rule was adopted of regulating privileges by the law of the *forum*. It has, however, produced inconveniences, for a steamboat, sold to pay her debts under a decree of the courts of Louisiana, has been taken from the purchaser at St. Louis under the claim of privileges given by the laws of Missouri, and re-sold to enforce the privileges.

" It is presumed, however, that more mature reflection will demonstrate the impractibility of permitting the laws of lien or privilege to follow moveables into a new jurisdiction. That lien or privilege is part of the remedy seems clear, when we consider the purpose for which they are given. They are the means of enforcing a right, which right is always the payment of a sum of money ; and a privilege or lien is the means of compelling the payment, and is analogous to a seizure or execution. We do not respect mortgages given in other States, when they are claimed on negroes brought into Louisiana. A party who claims a privilege on a moveable, must not permit that moveable to leave the jurisdiction of the State or country which confers the privilege. The utter impractibility of paying any attention to the laws of lien or privilege of other States on vessels or other moveables, is a complete answer to any claim of right founded on the laws conferring such privileges or liens.

" I consider that my opinion on this subject is entitled to some authority, as a long administration of justice in the courts of the first instance enables me to comprehend the bearing of these kinds of rules in practical affairs of this nature."

Judge Buchanan, who succeeded Judge Watts on the bench of the late First District Court, states the practice to have been uniformly to the same effect.

Without being required to assent to the principle adopted by Judge *Watts*, as to liens and privileges in all cases appertaining exclusively to the remedy and as such regulated by the law of the *forum* alone, it must be admitted that the views given by him as to the impractibility of the opposite system are sound, and that his exposition of the law and the practice of our courts under it in relation to privileges on ships and vessels, is in accordance with the textual provisions of our Code.

Privilege can be claimed only for those debts to which it is expressly granted in this Code. C. C. art. 3152. This article has always received the construction from our courts which its terms import, and no privilege by implication, or other than that created by positive enactment, has been recognised. *Grant* v. *Fial*, 17 La. 158. *Hoffman* v. *Laurans*, 18 La. 72. *First Municipality* v. *Hall, ante* p. 549.

Art. 3202 provides that the following debts are privileged on the price of ships or other vessels, in the order in which they are placed: they are eleven in number, and the material-men, seamen, and others are provided for in their order, and provision is made in subsequent articles for the loss and extinguishment of privileges. We are not aware of a single case in which any privilege has been

recognised in the distribution of the proceeds of a vessel, other than those mentioned in the Code.

The policy of our system, which confines privileges to those expressly created by law, is very obvious to those who have had the means of observing the abuses to which its extension would necessarily lead. It would be impossible to prevent collusion between the owner of a vessel and creditors whom he might wish to prefer, or who would hold up and keep unsatisfied their secret privileges, to be enforced as his interests required, to the detriment of *bonâ fide* creditors. Even under our system, restricted as it is, this abuse prevails to a certain extent, and imposes on our courts the duty of rigid scrutiny of all claims which carry with them privileges on the proceeds of a vessel under judicial authority.

We think that the framers of our Code, in establishing privileges on ships and vessels, did not intend to confine the operation of their legislation to those belonging to this port, or owned in this State; but laid down general rules in relation to the distribution of their proceeds, without regard to their origin or the place of their owner's residence. The existence of privileges on vessels under the law of other States was a fact before them, and none of any kind are allowed except those expressly recognised and enumerated in the Code.

That a failure to acknowledge, or enforce, liens or privileges on moveables created by foreign laws, cannot be considered as derogating from the comity which prevails among States in relation to the effect to be given to foreign laws, is obvious. A nation within whose territory personal property is found, has as entire jurisdiction over it while there as it has over immovable property. Its exercise for all purposes is a question of policy, and may be co-extensive with its authority over the latter. Civil Code, art. 9. Story Conflict of Laws, § 550. *Penny* v. *Christmas*, 7 Rob. 499. *Harper* v. *Stanbrough*, ante p. 377. We therefore conclude, that the claims of *Glover* and others are not privileged.

The judge of the District Court from whose judgment this appeal is taken, decided in favor of the privileges claimed by *Glover* and others, on the ground that the privilege, attaching by the law of the place of the contract, became a part of the contract, which ought to be maintained and carried out in its integrity, and that to deprive the party of the privilege was virtually to impair the obligation of the contract. The right of a creditor to enforce a privilege created by a foreign law on a moveable within this State as part of the original contract, is the antagonist theory to that which considers the privilege as exclusively appertaining to the remedy. We do not feel ourselves called upon to adopt either in the present case, as our own legislation has placed the moveable exclusively under the operation of our own laws, which the sovereign power has the same right to do as it has to determine what property shall, and what shall not, be subject to the payment of debts under execution.

Whoever has taken the trouble to examine the opinions of writers of acknowledged authority on this vexed question of conflicting laws, will be struck with the difficulties which every phase of it presents, and the almost necessity of remedying the evil by positive legislation.

The learned judge has referred to several authorities in support of his opinion, which he considers as recognising the doctrine that the privilege, forming part of the contract itself by the law of the country where it is made, followed the property into one where by law no such privilege existed. The case

<div style="margin-left:left">LEE<br>
v.<br>
CREDITORS.</div>

of *Whiston et al.* v. *Stodden & Hewit's Syndics*, 8 Mart. 134, was determined in 1820, and consequently without reference to the effect of our Code of 1825.

The opinion in the case of *Sabatier et al.* v. *Their Creditors*, 6 Mart. N. S. 589, we do not understand as relating to a right created under a foreign law; and as we have seen in the practice of our courts since, the case of the *Ohio Insurance Company* v. *Edmonson*, 5 La. 296, decided in 1832, has never been considered as determining the question under consideration. Indeed, so far as authority is considered in relation to the conflict of laws in similar cases, and the comity which is to be observed in relation to the right of priority of payment created by the law of the place where the contract is made, the decisions of the highest tribunal in the Union are directly and positively against its recognition. *Harrison* v. *Sterry*, 5 Cranch, 298. *Smith, Administrator,* v. *The Union Bank, &c.,* 5 Peters, 523.

In the distribution of insolvent estates under our laws, we are not aware of any distinction that is recognised among creditors, dependent on the place of the origin of the debts. The distribution is made according to the order of privileges and mortgages established in the Code, as of the proceeds of a common pledge.

It has been urged in argument that the sale was made for the purpose of defeating the rights of *Glover et al.*, the appellees, on the steamer, and that it was in that respect fraudulent, and that the appellants can have no claim under the sale. That objection is obviated by our decision as to the existence of the privilege asserted by *Glover et al.* In regard to the *bona fides* of the sale itself, for the price of which *Handy* claims a privilege, we find nothing in the evidence which would authorise us in disallowing it.

The judgment appealed from must therefore be reversed, and a privilege allowed to *Handy* of the vendor on the proceeds of the one-half of the steamer *Old Hickory*, for the sum of $7,750; the costs of the appeal to be paid by the appellees.