## Case No. 668.

AUTHER et al. v. The ATLANTIC.

Circuit Court, E. D. Louisiana.   May 4, 1853.

MARITIME LIENS UNDER STATE LAWS — JURISDICTION—SALE.

[The sale of a vessel under a decree of a state court in satisfaction of a lien under the law of the state extinguishes prior maritime liens; and courts in other states where similar liens have been created, are bound by such disposition of the vessel.]

[Disapproved in The N. W. Thomas, Case No. 10,386.]

[See, contra, The Henrietta, Case No. 6,121; James v. The Pawnee, 19 Mo. 517.]

[In admiralty. Libel by J. W. Auther and others against the steamboat Atlantic. Dismissed.]

CAMPBELL, Circuit Justice. The libellants are merchants of the city of New Orleans who had furnished to the steamboat Atlantic, at the request of the master and owner, stores, materials, and supplies from the year 1850 to May, 1851, while she was plying between the ports of New Orleans and St. Louis. The owner is a non-resident of Louisiana, and his boat is a foreign vessel registered at St. Louis. The libellants claim that by the laws of Louisiana, as declared in the Civil Code, as well as under the general admiralty law, there is a lien existing on this boat, in their favor, to the extent of these demands. The claimants respond that the boat, in the month of May, 1851, and posterior to the creation of the debts in the libel, was at St. Louis, and that, while there, tradesmen, mechanics, and the officers and men who had manned her, proceeding under the act of the legislature of Missouri[1] which affords to such classes of creditors a lien upon vessels and boats navigating the waters of the state, for debts like this, caused the boat to be attached, and by the decree of the court of common pleas of St. Louis county, at their suit, she was condemned to be sold, and was sold to their vendors. They plead that the court was competent, and the proceedings of the court regular and valid.

The record of the proceedings in that cause is in evidence, and sustains the averments of the answer: the sale to the vendors of the plaintiff was made by the sheriff of St. Louis county in June, 1851, under a valid order, in a cause arising under the [* * *.][2]

There are several questions of interest arising in this suit: (1) Was there an existing lien in favor of the libellants on the 30th August, 1851,—the date of the attachment of the boat in this cause,—under the Code of Louisiana? (2) Was there a lien under the admiralty law, the boat having left here in May without any attachment, and returning only in August of that year? (3) Does the admiralty law recognize a lien in favor of a running account created between material men and the officers of boats for supplies or service continuing from trip to trip for sev-

[1] [Rev. St. Mo. c. 20, § 13, provides that "when any boat or vessel shall be sold under the 11th section of this act, the officer making the sale shall execute to the purchaser a bill of sale therefor, and such boat or vessel shall, in the hands of the purchaser and his assignee, be free and discharged from all previous liens and claims under this act."]

[2] [Concerning the omissions in this opinion indicated by asterisks, Mr. E. R. Hunt, clerk of the United States circuit court for the eastern district of Louisiana, states, under date February 20, 1893: "The copy has been compared with the book of opinions from which it was taken, and corresponds exactly. A careful search in the records fails to find the original opinion, and therefore I cannot supply what was apparently left out in the opinion."]

-eral months, and when semi-monthly trips are made? (4) Does there exist any lien superior or different from that given by the municipal law in favor of merchants domiciliated here, and contracting in this place with a vessel frequenting this port, as above stated? I shall not decide either of these questions, conceding that there was a valid lien, and that but for a change of ownership it might have been enforced. I propose to consider the question, what is the effect of this change of ownership upon such a lien?

The principle is clear that an existing and operative lien, as a general rule, is not divested by the voluntary disposition of the ship or boat by the owner. In the case of The Bold Buccleugh, 14 Jur. 134, the admiralty judge says: "No one can reasonably contend that a sale after a collision, with a knowledge of it, would produce that effect, because, if so, the owners of a vessel doing damage would have nothing to do but to sell her, for the purpose of taking from the parties aggrieved their best security for compensation. Therefore, as a general precedent, I am prepared to deny that a mere transfer of a vessel, which has been guilty of doing damage, can at all diminish the liability of that vessel to be arrested." The rule, when the transfer is a forced one, is the reverse; in that case the purchaser takes the property discharged or pre-existing [* * *.] The right of a party to attach a vessel is a right conferred by law, and its enforcement is dependent upon judicial interposition. The property is taken into its custody, and the courts are subsequently the vendors; the courts in this are but the depositories of the soveraign authority and act in obedience to it. Public policy requires that a disposition of the property under such circumstances, and in a form so [* * *,] should be obligatory upon all; the statute of Missouri expressly provides that the operation of such a sale as this shall be to discharge all other liens and incumbrances.

The enquiry arises whether the courts of other states where similar liens have been created are also bound by such a disposition. The answer is that properly they should be so bound. The property was within the control of the state and of its courts at the date of the condemnation, and the decree of condemnation and sale was not arbitrary nor confiscating, but regular, judicial, to the end of settling private rights according to a legal ascertainment. The effect of the act of sale was to create new proprietary interests, upon considerations that the laws approve and encourage. In the case before us the privileged creditors, who now attach, have no higher claim upon the favor of a court of admiralty than those who have already asserted and established their rights in the vessel; the purchasers have extinguished such claims under the sanction of a court from which they derive at once title and the possession of the property. Such being the facts, all other courts must consider the justice of their title, and should submit to the jurisdiction which lawfully conferred it. This principle is enforced in the high court of admiralty in Great Britain, (2 W. Rob. Adm. 453;) [* * *] was applied in the case of The Globe, [Case No. 5,483,] by Judge Nelson, and by the supreme court of Missouri, (10 Mo. 614;) and is recognized in 2 La. Ann. 599. The same principle has been found appropriate in analogous cases appearing in the decisions of the supreme court of the U. S. It was applied to settle the conflicting claims of execution [* * *] issuing from federal and state jurisdictions within the same state.

The court says a most injurious conflict of jurisdiction would be often likely to arise between the federal and state courts if the final process of the one could be levied on property which had been taken by the other. No such case can exist; property once levied on remains in the custody of the law, and it is not liable to be taken by another execution in the hands of a different officer, and especially one acting under a different jurisdiction. The same court, at its last term, applied the doctrine to the adjustment of the relative claims of judgment creditors, each having liens, and that of the judgment creditor in the judicial court being the superior, but that in the state court having been the first asserted by a seizure of the property. Wiswall v. Sampson, 14 How. [55 U. S. 52.] My conclusion is, that the answer having been sustained by proof, the prayer of the libel cannot be allowed.