———o———

No. 3779.

Court of Appeal, Parish of Orleans.

JEAN MARIE GELE vs. WIDOW CAROLINE COTONIO.

1. All deeds of sale made by collectors of taxes shall be received by Courts in evidence as prima facie valid sales, and there is nothing in the record to impeach the recitals of the deed as to advertisement and notice.

2. Where such deeds recite that all the proceedings have been according to law and the tax payer's denial that he received notice is not obtainable, and the revenue act under which the sales were made

did not require the tax collector to keep any record of the proceedings leading to the sale, no presumption can arise adverse to the title from a failure or inability to produce records to that effect, and the burden of proof is not thereby shifted to the tax purchaser.

3. The failure of the purchaser to pay City taxes due on the property at the time of his purchase does not impair his title; the State authorities were not charged with the duty of collecting the same, it was no concern of the divested owner or his assigns, and was merely a matter between the City and the adjudicatee.

4. A possessor in bad faith is one who knows that he has no title to the thing or that his title is vicious or defective or who, though originally in good faith, becomes informed of the defects of his title by a suit brought against him.

5. The judgment under which the sale to defendant was made was an absolute nullity on its face; a servitude does not give a privilege or a right to an action in rem, and it has become settled law that a non-resident cannot be brought into Court without attachment of his property.

6. The judgment being absolutely void for defects patent on the face of the proceedings, the party opposing its defects as to him is not driven to a direct action in the Court which rendered it to secure the declaration of its nullity, but may attack it at any time and anywhere.

7. The owner of the soil, as a general rule, is liable to a possessor in bad faith only for those improvements of which he may order the removal, and in the case of improvements inseparable from the soil, the principle, by which one man is not permitted to enrich himself at the expense of another, has no application.

8. But this rule cannot be strictly enforced in a City, where such matters are in part governed by police regulations in the interest of the public health, and we may not ignore the binding force of a City ordinance compelling the filling of lots which are below grade and covered with stagnant water.

Appeal from Civil District Court, Division "B."

Benjamin Ory & E. J. Murphy, for Plaintiff and Appellee.

Theo. Cotonio, for Defendant and Appellant.

DUFOUR, J. The plaintiff in this petitory suit sets out his chain of title as follows:

The property was bought by Henry Adams in 1870, and was forfeited for nonpayment of State taxes of 1876 assessed in his name.

It was also adjucated to the State for nonpayment of taxes of

1882 and 1883 assessed in the name of Henry Adams, and the deeds to the State were registered in 1885.

In 1893, the Auditor sold the property to plaintiff under Sec. 3 of Act 80 of 1888 and the deed was recorded in 1900, on October 31st. The defendant in possession acquired the property at a judicial sale in execution of a judgment obtained by her in the early part of 1900, against Henry Adams.

She resists this demand on the ground that the sales to the State and by the State are void.

First. For want of legal advertisement.

Second. For want of legal notice.

Third. For failure to carry out the requirement of Act 80 of 1888, in this that said Auditor's deed was not preceded by the listing as required in section 1, of said Act, and there was no advertisement made as required in said section."

The deeds of sale to the State for the taxes of 1882 and 1883 are valid on their face and contain the usual necessary recitals as to the regularity of proceedings and the giving of notice.

The deed to plaintiff under section 3 of Act 80 of 1888 recites that the property was adjudicated to the State and has been once advertised and offered for sale by I. W. Patton, tax collector, in accordance with the provisions of Act 80 of 1883 and failed to sell."

All deeds of sale made by collectors of taxes shall be received by Courts in evidence as *prima facie* valid sales, and, hence the first question presented is, whether or not the testimony as to want of notice rebuts the prima facie nature of the deed, or destroys the presumption of regularity attaching to the same.

The dispossessed tax debtor could not be found and, hence, there is no denial in the record that a notice was served upon him.

The defendant called for the production of the tax collector's books, and Babcock, the present incumbent, produced the only one found in his office, a memorandum book. It contains a record of sales by Henry Adams for the State taxes of 1882 and 1883 and a clipping of the advertisements,, Babcock testifies that, when the office was turned over to him by his predecessor, there were no notices or any other documents left, except the book produced, and adds that they must have been destroyed.

The defendant relies on the absence of these records as sufficient to rebut the presumption of notice, and cites in support of his theory the case of Land Co. vs. Sholars, 105 La. 357.

In that case, the taxpayer assessed swore that no notice had ever been served upon him; the sheriff who made the sale was "dead and his evidence was lost to the case; his deputy sheriff was called to the stand by the defendants and testified that the only record kept in the sheriff's office of demand and notice to a delinquent tax debtor was a mere check mark made opposite his name on the tax rolls."

The Supreme Court after deprecating the failure of the tax collectors to keep a written record in such matters, said:

"Opposite his (Mr. Bryant's) name appears no check mark, XXXXX undoubtedly, a check mark, such as that shown by the testimony to indicate that notice of delinquency had been mailed, had once been opposite Bryant's (tax debtor) name and afterwards erased. The erasure is plainly visible. Who made it, and when made, who erased it and when erased, does not appear, and, if that were all, we would not consider that *prima facie* validity of the sale had been affected. But there appears the testimony of Trimble and Stubbs, who, in the spring or summer of 1899 before this suit was filed examined the tax rolls with reference to the assessment of Bryant. Both testify that at that time there was no check mark either before or after the name. XXXXX. The evidence of these witnesses together *with the testimony of Bryant* that he did not receive the notice, in connection with the tax roll was held sufficient to rebut the presumption of validity.

In other words there was nothing to corroborate the recitals of the deed which had been contradicted by the tax debtor, and there was no proof *aliunde* the deed offered by the tax purchaser, upon whom the burden of proof had been shifted.

In this case, as above stated, the tax debtor could not be found and his testimony is lost to the cause, and, as the revenue act of 1882 under which the sales herein were made did not require the tax collector to keep any record of the proceedings leading to the sale, no presumption can arise from a failure to produce records to that effect.

The burden of the proof is not shifted, and there is absolutely

nothing to impeach the recitals of the deed as to advertisement and notice.

Section 1 of Act 80 of 1888 makes it the duty of tax collectors to prepare and transmit to the Auditor a list of all immovable property adjudicated to the State for taxes of 1880 and subsequent years and not redeemed, and, upon the return with approval by the Auditor of such list to advertise said property once for sale.

In State vs. Sheriff, 44 An. 734, it was held that "without strict compliance with the provisions of this act, the tax collector is not authorized to make sale of State lands and an adjudication thereof without such compliance is absolutely void and conveys no title."

In that case, the sheriffs *proces verbal* recited that the sale was *intended* to be made in pursuance of and conformably to the provisions of the act, but did not contain any recital to the effect that the tax collector had complied with its specified conditions precedent. The plaintiff obtained the Auditor's testimony to the effect that the list prepared by the sheriff had been returned to him without approval and with the caution that he had failed to comply with the law.

In this case, the tax collector's records are apparently lost, the Auditor was not interrogated as a witness and the Auditor's deed recites that the tax collector had complied with the provisions of the act.

In reply to the objection that the plaintiff's title is not complete because he did not pay the City taxes resting upon the property at the time of his purchase, it is sufficient to refer to the following language of the Supreme Court in Gowland vs. City, 52 An. 2046.

"The State authorities were not charged with the duty of collecting the City taxes. These remained upon the property, subject to the payment by the adjudicatee under the personal obligation assumed by him to do so. If the property passed from the owners of the persons owing the tax to the State, in enforcement of State taxes, the owners so divested of titles were in no position to set up as against the acquisition by a third person of a legal

title to the same from the State that this purchaser had not paid the City taxes then due on the property. If the property had passed from them to the State, it was no concern of theirs whether for the purpose of acquiring title, the adjudicatee paid the City taxes immediately or not. This was a matter between the City and the adjudicatee."

Our conclusion is that defendant's attack on the validity of plaintiff's title is not sustained.

We now pass to the question of the following re-imbursements claimed by the defendant.

First. Ninety-five 22/100 dollars amount paid to the constable when defendant purchased, including therein certain City taxes paid and the cost of cancelling others.

Second. Thirty-five 52/100 for pro rata cost of fence.

Third. Eighty-seven for filling the lot under the requirement of a City ordinance.

The question of the right to recover for improvements and of the extent of such recovery depends upon whether the defendant was a possessor in good faith or one in bad faith.

A possessor in bad faith is one who knows that he has no title to the thing or that his title is vicious or defective, or who, though originally in good faith becomes informed of the defects of his title by a suit brought against him.

R. C. C. 503-3452.

The origin of defendant's title is as follows:

In 1899 she put up a fence between her property and the one in controversy, and in 1900, without notice to Adams (who could not be located), she sued him as an absentee for half the price, with lien and privilege on the property, had a curator ad hoc appointed to represent him and, under a judgment in her favor recognizing such privilege, had the property sold by the constable and bought it in.

The property at that time stood on the public records as belonging to the State under a tax sale divesting Adams ownership, and the defendant was thereby informed that the property did not belong to the party selling it to her. The very certificate annexed to the act of sale made the fact more emphatic.

This mode of acquiring property is rather peculiar, though

doubtless convenient, but it finds no lodgment in our law of transfer and tensure.

The judgment was an nullity on its face; a servitude does not give a privilege or a right to an action *in rem* and, since the decision in Pennager vs. Neff, it has become settled law that an nonresident cannot be brought into Court without attachment of his property.

18 La. 70, Mann Nnep. cases 244.

95 U. S. 714-44 An. 383.

The judgment being absolutely void for defects patent on the face of the proceedings, the party opposing its effects as to him is not driven to a direct action in the Court which rendered it to secure the declaration of its nullity but may attack it at any time and anywhere.

105 La. 481.

The defendant as a possessor in bad faith cannot recover the amount paid to the constable for the sale under execution of a judgment knowingly obtained illegally by her.

She is, however, entitled to get back the City taxes, which the owner would have had to pay, amounting to thirty 67/100 dollars, and also the costs of cancelling other City taxes or tax privileges, amounting to ten 40/100 dollars, in all forty-one 17/100 dollars.

She cannot recover the *pro rata* of cost of fences put up by her after her purchase for several reasons.

First. Because from the nature of the case, she acted as owner and put them up at her own risk and peril and on her own responsibility.

Second. Because they separate the property in controversy from that of persons other than the defendant, who have paid their share and acquired an interest in the fences, and the plaintiff is powerless to cause their removal, should he elect not to keep them.

Third. Because the owner of the soil is liable "only for those improvements of which he may order the removal" and "in such a case, the principal by which one man is not permitted to enrich himself at the expense of another, has no application."

113 La. 303.

But we do not think that the declaration of the foregoing case

that the possessor in bad faith "cannot recover for ditching, clearing land and other improvements inseparable from the soil," so clearly applicable to real property, should be strictly followed so far as regards lots in a City.

These are governed in part by police regulations in the interest of the public health and we may not ignore the binding force of a City ordinance compelling the filling of lots.

The uncontradicted testimony of Mr. Cotonio is that "the ground was very low, below grade, allowing water to remain stagnant, and under the provision of the City Ordinance 558 we had to fill it up, otherwise the Board of Health would have made us fill it up, and for filling we expended the sum of $87.

As the owner would have had to do likewise, he should pay the costs. The judgment of the lower Court in favor of plaintiff and against defendant on the main demand is affirmed, the Judgment on the reconventional demand is reversed, and it is now ordered that there be judgment against plaintiff in suit and in favor of defendant in suit and plaintiff in reconvention, Mrs. Caroline Cotonio, in the sum of one hundred and twenty-eight 17/100 dollars with legal interest from judicial demand, that the defendant be condemned to pay the costs of the District Court on the main demand, and the plaintiff to pay the costs of said Court on the reconventional demand (113 La. 871) plaintiff to pay also the costs of appeal.

Feby. 5, 1906.

Rehearing refused Feb. 19, 1906.

Writ refused April 4, 1906.