*336
 
 Johnson, Justice,
 

 delivered the opinion of the court. — The judgment below is rendered upon an agreed case, on which the following state of facts is exhibited. The defendant’s testator was domiciled at Norfolk, in Virginia, at which place he contracted a debt on bond to one Thompson. He was also indebted to the Union Bank, the defendant in error, on simple contract. He died at Bedford, in Pennsylvania, and the defendant Smith administered on his estate in the county of Washington, in this district. Robertson, at the time of his death, was possessed of personal assets in the county of Washington ; and the administrator, having reduced these assets into possession, now holds them subject to his debts.
 

 By the laws of Maryland, which govern the county of Washington, all debts are of equal dignity in administration ; but by the laws of Virginia, the country of Robertson’s domicil, bond debts have preference, and the assets are insufficient to satisfy both. The question then is whether the bond debt shall take precedence, or come in average with the simple-contract debts ?
 

 On the bearing of the
 
 lex loci contrae,t,ús,
 
 on this question, nothing need be added to the doctrine of the chief justice of this court in the case of
 
 Harrison
 
 v.
 
 Sterry,
 
 to wit:
 
 “
 
 the law of the place where the contract is made is, generally speaking, the law of the contract; that is, the law by which the contract is expounded. But the right of priority forms no part of the contract itself.” The passage which follows these words in the same opinion will present, in as succinct a form as they need be stated, the pro- .¡, -, potions on the correctness of which the decision of this '"cause must, mainly, depend. It is in these terms : “ It (the right of priority) is intrinsic, and rather a personal privilege, dependent on the law of the place where the property lies, and where the court sits, which is to decide the cause. In the famiiar case of the administration of the estate of a deceased person, the assets are always distributed according to the dignity of the debt, as regulated by the law of the country where the representative of the deceased acts, and from which he derives his power.”
 

 The argument urged against this docrine is, that personal property has no
 
 situs ;
 
 that it follows the law of the person ; and that there is no other rule that can give uniformity and consistency to its administration. In support of this argument, great industry has been exhibited in collecting and collating the cases which relate to the distribution of intestates’ effects, and the execution of the British bankrupt law; and analogy, it is insisted, requires the. application of the rule of those cases to that of the payment of debts.
 

 With regard to the first class of cases, we expect to be understood as not intending to dispose of them, directly or incidentally. Whenever a case arises upon the distribution of an intestate’s effects, exhibiting a conflict between the laws of the domicil and those of the
 
 situs,
 
 it will be time enough to give the views of this court on the law of that case. And as the cases in which the British courts have asserted a power over the effects of a bankrupt, the
 
 situs
 
 of which placed them beyond the action of their bankrupt laws, we are not aware of any instance in which they have gone further than to treat that power as an incident to the jurisdiction of these laws over their own subjects. As, in the instance in which a British subject had, by process of law, in this country, possessed himself of the effects
 
 *337
 
 of a British bankrupt, to the prejudice of the other creditors. That there is no violation of principle in doing this, is fully affirmed in the same case of
 
 Harrison
 
 v.
 
 Sterry
 
 ; in which this government, and this court, availed themselves of jurisdiction in fact over the effects of a foreign bankrupt, so as to subject them to the priority given by our laws to the debts due our government. Each government thus asserting the power of its own laws over the subject-matter, when within its control.
 

 *That personal property has no
 
 situs,
 
 seems rather a metaphysical position than a practical and legal truth. We are now con- *-
 
 0
 
 sidering the subject with regard to subjecting such property to the payment of debts, through the medium of letters of administration. And here there is much reason for maintaining, that even the common law has given it a
 
 situs,
 
 by reference to any circumstances which mark it locally with discrimination and precision. Thus, in the case of
 
 Byron
 
 v.
 
 Byron
 
 (Hil. 38 Eliz.),Cro. Eliz. 472, Anderson, Chief Justice, says, “ the debt is where the bond is, being upon a specialty, but debt upon contract follows the person of the debtor; and this difference has been oftentimes agreed.” So, Godolphin lays down the same distinction, as established law. (Orphan’s Legacy 70.) And Swinburn lays down the same rule with still greater precision, as well against the effect of domicil as of the place of contract. For he says, “ debt shall be accounted goods, as to the granting of administration, where the bond was at his (creditor’s) death, not where it was made.” And again, “ debts due the testator will make
 
 bona notabilia
 
 as well as goods in possession ; but there is a difference between bonds and specialties, and debts due on simple contracts : for bond debts make
 
 bona notabilia,
 
 where the bonds or other specialties are at the time of the death of him whose they are, and not where he dwelt or died ; but debts on simple contracts are
 
 bona notabilia
 
 in that country where the debtor dwells.” (Part 6, ch. 11.) And so of judgments, locality is given them by the
 
 situs
 
 of the court where they are entered. Carth. 149 ; 3 Mod. 324 ; 1 Salk. 40 ; Dyer 305 ; 1 Roll. Abr. 908 ; 1 Plowd. 25 ; Carth. 373 ; Comb. 392, are cited for these distinctions.
 

 It is not unworthy of remark, that in almost every treaty between civilized nations, we find an article stipulating for permission to remove the goods of a deceased subject to the country of his domicil. And from the generality of the stipulation, it would seem to be intended, for the purpose of subjecting the goods to the law of the deceased’s country or domicil, even as to their application to the payment of debts. There is the more reason to believe this, with regard to our own treaties, since there are two instances in which the generality of that provision is deviated from ; the one in favor of the payment of debts due where the goods are, *and the other subjecting the right of property to the law of the
 
 sitjus.
 
 I mean, the
 
 <-
 
 French consular convention of 1788, by the 5th article of which it is expressly stipulated, that goods shall be subjected to the payment of debts due in the foreign country. And both our treaties with Prussia contain a stipulation, in the 10th article, “that if questions shall arise among several complainants to which of them the said goods belong, the same shall be decided finally by the laws and judges of the land wherein the said goods are.” It would seem, that such a provision would be wholly unnecessary, if there existed any established rule of international law, by
 
 *338
 
 which the law of the domicil could be enforced in this regard, in the country of the
 
 situs.
 
 Or, if the fact of locality did not subject the goods to the laws of the government under which they were found at the party’s death.
 

 In point of fact, it cannot be questioned, that goods thus found within the limits of a sovereign’s jurisdiction, are subject to his laws ; it would be an absurdity, in terms, to affirm the contrary. Even the person of an ambassador is exempted from jurisdiction, only by an established exception from the general principle. And the
 
 onus
 
 lies certainly upon those who argue here for the precedence of the law of the domicil, to establish a similar exception in favor' of foreign debts. But if we look into books, we do not find it there; for it is an acknowledged doctrine, that in conflicts of rights, those arising under our own laws, if not superseded in point of time, shall take precedence, “
 
 mqjus jus nostrum quam jus aliervum
 
 servemus.” The obligation of the sovereign to enforce his own laws, and protect his own subjects, is acknowledged to be paramount.
 

 If we look into facts, we find no evidence there, to sustain such an exception ; for every sovereign has his own code of administration, varying to infinity as to the order of paying debts ; and almost without an exception, asserting the right to be himself first paid out of the assets. And the obligation on the administrator to conform to such laws, is very generally enforced, not only by a bond, but an oath; both of which must rest for their efficacy on the laws of the state which requires them. On what principle, then, shall we insert into all those laws an amendment in favor of * , foreign creditors, nowhere to *be found in their provisions; and in •* many instances, operating as a repeal of or proviso to theii enactments ?
 

 Nor will the search after the exception under consideration, be attended with any greater success, if extended to the reason and policy of laws. Property, palpably and visibly possessed, is calculated rather more certainly to give credit, than actual residence. The inhabitant of a northern or eastern state may be largely interested as a planter in the south, or in Cuba ; his agent may there, with or without express instruction, have obtained extensive credits for subsistence or improvements, expended upon the very property itself ; when, upon the death of the proprietor, his estate may turn out insolvent; and insolvent from debts or speculations at the place of his domicil. What greater reason can, in such a state of things, be urged, in favor of the debts of his domicil, than what applies to those of the
 
 situs
 
 of his property? But the reason of the thing may be followed out a little further. Contracts
 
 contrá bonos mores,
 
 or against the policy or laws of a state, will not be enforced in the courts of that state, though lawful in the state in which they are entered into. Suppose, then, a bond given for the purchase of a slave were postponed or held void under the laws of the deceased’s domicil, though otherwise in the country of the
 
 situs
 
 of his property, what reason would there be in referring the creditor to the law of the domicil ? Or, rather, what iniquity in confining him to it ?
 

 The actual course of legislative action in every civilized country, upon the effects of deceased persons, seems wisely calculated to guard against the embarrassments arising out of such conflicts, and to preserve in their own hands the means of administering justice, according to their own laws and institutions. It has been solemnly adjudged in this court, and is the general
 
 *339
 
 principle in, perhaps, every state in the Union, that one administering in one state cannot bring suit in the courts of another state. This necessity of administering, where the debt is to be recovered, effectually places the application of the proceeds under the control of the laws of the state of the administration. And if, in any instance, the rule is deviated from, it forms,
 
 pro hue,
 
 an exception ; a voluntary relinquishment of a right, countenanced by universal practice; and is of the * character of the treaty stipu- r¡1. lations already remarked upon, by which foreign nations surrender
 
 <-
 
 virtually a right, which locality certainly puts in their power.
 

 Whether it would or would not be politic, to establish a different rule by a convention of the states, under constitutional sanction, is not a question for our consideration. But such an arrangement could only be carried into effect, by a reciprocal relinquishment of the right of granting administration to the country of the domicil of the deceased, exclusively, and the mutual concession of the right to the administrator, so constituted, to prosecute suits everywhere, in virtue of the power so locally granted him ; both of which concessions would most materially interfere with the exercise of sovereign right, as at present generally asserted and exercised.
 

 There is no error, therefore, in the judgment below, and the same is affirmed, with costs.
 

 Baldwin, Justice, dissented from the opinion and judgment of the court.
 
 [1]