JOHN W. RICE, Executor, etc., Respondent, *v.* JOHN HARBESON et al., Appellants.

The common-law rule that the personal estate of a deceased person will be applied to the payment of his contract debts, to the relief of his real estate, is not of universal application, and will not be enforced where it is in apparent hostility to the plain intent of the deceased, as expressed in his will, and will defeat bequests made therein.

The equitable rule upon which the doctrine of marshaling assets is based, to wit, that where one claimant has two funds to which he may resort to answer his demand, another claimant who has an interest in only one can compel the former to take satisfaction out of that fund, on which the latter has no lien, is general in its character and applicable to the claims of legatees as well as those of creditors.

One M., a citizen of New York, died, leaving a will, in which he author-ized his executors and trustees to bring all the property of which he might die possessed in America into divisible shape, and after paying debts and testamentary expenses, to divide the residue into seven shares, to be distributed as specified. At the time of the execution of the will, the testator's property was mostly personal. He purchased thereafter real estate in South Carolina, paying $13,000 of the purchase-price in cash and giving his bond secured by mortgage on the property for $6,000. The will was admitted to probate in New York as a will of real and personal property, but in South Carolina only as a will of per-sonal property, it not having the number of witnesses required by the laws of that State to a will of real estate. All of the legatees under the will were aliens except the representatives of one of the shares, to whom as heirs at law the said real estate descended. The holder of the bond presented the same as a claim against the estate, and the same was directed by the surrogate to be paid by the executors out of the personal assets in their hands. *Held*, error; as to allow such payment would defeat the obvious intent of the testator, which was to have all his real and personal estate in this country divided equally among the benefi-ciaries named, and it would also give the heirs at law a benefit to which they are not entitled under the laws of this State (1 R. S., 749, § 4); and that a modification of the surrogate's decree, so as to require the creditor to first exhaust his remedy against the real estate before resort-ing to the personalty, was proper.

The said heirs at law brought suit in a South Carolina court against the executors and others to recover the real estate as in case of intestacy. The court adjudged that the decedent died intestate as to said real estate, and decreed that the executor pay the bond and mortgage out of the personal assets. *Held*, that the decree could not control the executor acting within and under the laws of this State; that as the application is made by the creditor to a tribunal of this State, the *lex fori* must prevail; and that the record of said judgment was not conclusive, as the personal property was not within or subject to the jurisdiction of the court.

(Argued September 28, 1875; decided January 18, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, reversing or modifying a decree of the surrogate of the county of New York, made upon settlement of the accounts of plaintiff as sole acting executor of the will of James Murdock, deceased.

The said James Murdock, who was a citizen and domiciled in the city of New York, died in that city June 10, 1869, seized of personal property in that city and certain real estate

in Charleston, S. C., and in Ireland, and leaving a last will and testament executed in Ireland July 7, 1868, of which the material portion is as follows:

"I, James Murdock, at present of Ballyclare, county Antrim, Ireland, being about to travel, do hereby make this, my last will and testament, as follows: I appoint John W. Rice, of New York city, and John Murdock, of the State of New York, as trustees and executors with power to bring all I may die possessed of in America into a divisible shape, but to take such time to do so as, in their judgment and discretion, may best conduce to the interests of all. After my just debts and testamentary expenses are paid I desire the balance to be divided into seven shares and distributed: 1st. One share to Nancy Murdock. 2d. One share to Ellen Murdock (otherwise Gault). 3d. One share to Mary Murdock (otherwise Alexander). 4th. One share to Maria Murdock (otherwise Hall). 5th. One share to be divided among the children of my late sister, Jane Murdock (otherwise Harbeson). 6th. One share to be paid to my nephew, John Murdock (above mentioned); and 7th. One share to my sister, Anne Murdock (otherwise Rawney), but to be paid to the Rev. John Hall, as her trustee, to be controlled and managed by him for her use and benefit as he may consider best." Then followed specific devises of testator's real estate in Ireland.

At the time of the execution of the will the testator owned personal estate to the amount of about $17,500, all in the city of New York, and one lot in Charleston. In February, 1869, he purchased certain real estate in Charleston for the sum of $19,000, paying $13,000 in cash and giving his bond, secured by a mortgage, upon the property. All of the legatees, except the children of testator's sister Jane Harbeson, to whom the fifth share was given, were aliens. The will was attested by two witnesses. It was admitted to probate by and before the surrogate of the county of New York as a will of real and personal property. John W. Rice alone qualified and acted as executor. In South Carolina it was only admitted to probate as a will of personal property, the

law of that State requiring three witnesses to a will of real estate.

The defendants, children of said Jane Harbeson, as the only heirs at law of the deceased, brought an action in the Court of Common Pleas for the county of Charleston against said executor and others, tenants of the real estate, to recover the same as in case of intestacy. The court adjudged that complainants were the legal heirs; that deceased died intestate as to the real estate in South Carolina, required the executor to account for the rents, and adjudged that the executor pay the bond and mortgage out of the personal assets.

The executor petitioned the surrogate for a final accounting. Upon the accounting the bond and mortgage was presented as a claim against the estate. The surrogate adjudged that the claim be allowed and directed the executor to pay the same, with interest, out of the proceeds of the personal property in his hands, which payment would exhaust nearly the whole of such proceeds.

The General Term ordered that this portion of the decree be reversed, or so far modified, that the claimant should exhaust the real estate covered by the mortgage, and on coming in of the proper proofs have payment of any deficiency out of the personal estate.

*Malcolm Campbell* for the appellants. The surrogate properly directed that the bond should be paid from the personal estate in the hands of the executors. (*Roosevelt* v. *Carpenter*, 28 Barb., 426; *Wright* v. *Holbrook*, 32 N. Y., 587; Dart on V. and P., 125; *Browne* v. *Monck*, 10 Ves., 596; *Livingston* v. *Newkirk*, 3 J. Ch., 312; *Cogswell* v. *Cogswell*, 2 id., 231; *Johnson* v. *Corbett*, 11 Paige, 265; *Lamport* v. *Beeman*, 34 Barb., 239.) This determination has all the force of a judgment, and is conclusive. (2 R. S., § 71; 3 R. S. [5th ed.], 182, § 78; *Bk. of Poughkeepsie* v. *Hasbrouck*, 6 N. Y., 216.) The creditor was not obliged to first resort to the real estate in South Carolina for payment of the bond. (*Clowes* v. *Dickerson*, 9 Cow., 403; 1 Story's Eq. Jur., 550,

577 ; *F. L. and T. Co.* v. *Walworth*, 1 N. Y., 451.) There was no equitable conversion of the South Carolina real estate into personalty. (*Harris* v. *Clark*, 7 N. Y., 242.)

*Richard O'Gorman* for the respondent. The bond should have been paid out of the mortgaged real estate. (1 Stat. at Large, 700, § 4.) The personalty being in this State is distributable only according to the laws of this State. (Story's Conflict of Laws, §§ 528, 529 [*a*], 325, 326, 327, 524, 525, 526; *Aspden* v. *Nixon*, 4 How., 467 ; *Pardo* v. *Bingham*, L. R., 6 Eq. Cas., 485 ; *Smith* v. *Un. Bk.*, 5 Pet., 452, 523, 524; *Holmes* v. *Remsen*, 20 J. R., 265 ; *McElmoyle* v. *Cohen*, 13 Pet., 324, 329, 330.) The record of the decree in the Court of Common Pleas in South Carolina does not bind the courts of this State. (*McElmoyle* v. *Cohen*, 13 Pet., 324, 329, 330.) The personalty should not be charged with the payment of the mortgage under the common law. (*Hewse* v. *Denon*, 3 Gray, 205, 208 ; 2 Redf. on Wills, 875 ; *Andrews* v. *Bishop*, 5 Al., 490 ; *Halsey* v. *Reed*, 9 Paige, 453.) In cases of testacy the intention of the testator should govern. (Story's Conflict of Laws, § 528.) The personalty should not be applied to ease the real estate, if thereby the payment of any legacy is prevented. (*Tipping* v. *Tipping*, 1 P. Wms., 729 ; *O'Neal* v. *Mead*, id., 693 ; *Cope* v. *Cope*, 2 Salk., 449 ; *Howe* v. *Meyricks*, 1 Atk., 201; *Clifton* v. *Burt*, id., 679.) In equity where one claimant has more than one fund to resort to and another only one, the first claimant must resort to that fund on which the other has no lien. (*Lanoy* v. *Duke of Athol*, 2 Atk., 406 ; *Davis* v. *Gardner*, id., 190 ; *Kean* v. *Wagner*, id., 335 ; *Howell* v. *Price*, 1 id. ; *O'Neal* v. *Mead*, 1 P. Wms., 693.) The will having been admitted to probate as a will of personal estate, the real estate, for all purposes of the will, should be regarded as money. (Story's Eq. Jur., §§ 792, 793, 1212, 1213.) The words in the will, "after my just debts, etc., are paid," did not create any charge on the legacies. (2 Redf. on Wills, 868; 1 Story's Eq. Jur., 601, note.)

Miller, J.   The right to enforce the payment of the mortgage upon the real estate of the deceased in the State of South Carolina, out of the personal estate in the hands of his executor, depends upon a rule of the common law to the effect that land, descended or devised, is not liable to simple contract debts of the ancestor, or of the testator.   This rule, however, is not without exceptions, and in *Tipping* v. *Tipping* (1 P. Wms., 729), where a bill was filed by a widow who was administratrix against the heir to compel him to make good her jointure, etc., the Lord Chancellor denied it to be a rule that, in all cases, the personal is applicable in ease of the real estate, and remarked, " for it should not be so applied, if thereby the payment of any legacy shall be prevented."   (See, also, *O'Neal* v. *Mead*, id., 694 ; *Clifton* v. *Burt*, id., 678 ; *Herne* v. *Meyrick*, id., 201 ; *Cope* v. *Cope*, 2 Sack., 449.)   The rule stated is not, therefore, of universal application, and if enforced in the case at bar would result in entirely defeating the bequests made in the will in apparent hostility to the plain intention of the testator.   But without considering further whether the exceptions within the authorities cited embrace a case bearing the essential features of the one now presented, another principle may be invoked to sustain the decision of the General Term in this case, which courts of equity have frequently applied in similar cases ; and that is, the doctrine of marshaling assets in behalf of the legatees, creditors, or distributees, which is analogous to that of marshaling securities in favor of creditors and sureties.   This doctrine rests upon the equitable rule that where a claimant has two funds to which he may resort, both real and personal assets to answer the demand, and another an interest in only one, the last claimant has a right to compel the former to take satisfaction out of that fund on which the second has no lien.   (Willard's Eq. Jur., 561, 562 ; *Lanoy* v. *The Duke of Athol*, 2 Atk., 446 ; *Aldrich* v. *Cooper*, 8 Vesey, 388 ; Story's Eq. Jur., § 633, and note 2.)

This power is frequently exercised by the courts to protect the rights of parties and to do justice between them, and it

is eminently proper to invoke its aid where, as in this case, a different rule must inevitably tend to defeat the claim of most of the legatees under the testator's will, and virtually transfer almost the entire estate of those who, if the will was effective as to the real estate in South Carolina, would only share equally with the other legatees. A distribution of the whole estate in equal shares among the legatees named, would comport with the evident intention of the testator, which should govern in such a case. (Story on Conflict of Laws, § 528.) It is entirely manifest that he intended that all the property, real and personal of which he died seized, and possessed, except such as was specifically devised, should be converted into money and divided into seven parts among the legatees named in the will as therein stated. For this purpose he authorized his trustees and executors to bring all his property into "divisible shape, but to take such time to do it as, in their judgment and discretion, may best conduce to the interests of all," and provided for its distribution. Although the testator did not, at the time of the execution of the will, own the real estate in South Carolina, but purchased it afterward, yet it is evident that the intention was that the will should take effect from the time of his decease (5 Genl. Stat. [Edmonds' ed.], 366, § 7; 2 R. S. [1st ed.], 57, § 5); and as it covered all the property which he then held, and it may fairly be assumed that he had in view at the time of its execution his entire estate, it is clear that he did not contemplate that the amount of the mortgage upon the real estate which he had subsequently acquired should be deducted as a debt against the estate which was to be divided so as to deprive those legatees who represented six shares of their equal portion. Without considering to what extent the provisions of the will are liable to objection in carrying out the relator's intention, or placing a construction upon its terms, it is sufficient to remark, that the general and real purpose of the will is adverse to any such theory. The provision as to the payment of debts is harmonious with the apparent intention, and evidently meant such debts as

might have been ordinarily incurred by the testator, and not an incumbrance upon real estate, which, if the will had been properly executed, according to the laws of the State of South Carolina, would constitute a part of the property to be divided. If, by a want of knowledge of the laws of that State as to the number of witnesses required, the will has failed to be effective as to the real estate there situated, it does not necessarily follow that such was the intention. Such an inference is adverse to the main object of the will, which evidently was based upon the idea of converting the testator's real and personal property into money, and a division of the avails as legacies in seven shares, as specified. Otherwise we must assume, what is adverse to the import of the will, that the testator designed that his estate should not be divided into seven equal parts; that those who represented six parts should receive but a trifling and an inconsiderable portion thereof, and that one single share should take almost the entire property.

In thus construing the will, we have a right to consider that the testator, at the time of his death, as the surrogate's proceedings show, was a resident of the State of New York, where the will was valid as to both real and personal property. It is urged that the principle of equitable interposition has no application to any such case as the one now considered, but only relates to debtor and creditor. This is erroneous, and the rule is an equitable one which is general in its application. In *Taylor* v. *Todd* (58 N. Y., 335, 350), it was applied to the construction of a will where specific legacies were bequeathed, and *Lanoy* v. *The Duke of Athol* (*supra*), was cited as authority to sustain it. The latter was not a case between debtor and creditor, but involved questions as to a marriage settlement, a legacy, and other matters arising out of the same, and also as to the fund out of which the dividends should be paid. *The Farmer's Loan and Trust Co.* v. *Walworth* (1 Comst., 451), is not in conflict with the views expressed.

It is not necessary in the case at bar to establish a rule of universal application to all cases. The present is an excep-

tional one; for, as already stated, it is manifest that the testator designed that his property should be divided into seven shares. That design will be frustrated by an informality in the execution of the will so as to prevent its application to the real estate in South Carolina, unless the equitable rule stated can be held to control. No harm can be done, and no loss accrue thereby to the creditor, as it nowhere appears that the mortgaged premises are not adequate to pay the demand, and that the full amount of the same cannot be realized upon a foreclosure sale. It may also be observed, that if the heirs at law to the real estate in South Carolina had made the application to the surrogate, the provision contained in 1 Revised Statutes, 700, section 4, to the effect that the heir or devisee of real estate, subject to a mortgage of any ancestor or testator, shall satisfy such mortgage out of his own property without resorting to the executor or administrator, would apply, and he would be compelled to look to the real estate for the payment of the same. The effect of enforcing the claim now made is the same in respect to the heir or devisee, if it comes out of the real estate, and to appropriate the personal estate for such purpose would be giving a single devisee a benefit to which he is not entitled, according to the statute cited. If the rights of the creditor can be maintained without producing the unjust result between the parties, it should be done. It has not been suggested that there is any difficulty in obtaining a full indemnity in this respect. In fact, it does not appear that under the laws of the State of South Carolina the mortgage could not be foreclosed and the property sold for such a purpose, and we have a right to assume that the laws of the State, to whose courts the appeal is made for redress, furnishes *prima facie* the rule of decision; and if either party desires the benefit of a different rule or law, he must aver and prove it. (*Monroe* v. *Douglass*, 1 Seld., 447.)

For the reasons stated the decision of the General Term was right, unless the judgment obtained in a court of the State of South Carolina, decreeing the payment of the bond and mortgage by the executor out of the personal assets of

the deceased, is effective in this State. The judgment in the South Carolina court was evidently a proceeding *in rem* in regard to the real estate there, and the decree for the payment of the mortgage by the executor cannot control an executor acting within and under the authority of the laws of another State in reference to personal property, where such laws are in conflict with those of the State where the judgment was rendered. As the application of the creditor is made to a tribunal of this State, the rule is well settled that the law of the locality where the proceeding is instituted or the *lex fori* must prevail. (Story on Conflict of Laws, § 556.) So, also, where there is a conflict, the court which decides will always prefer the laws of its own country to those of another. (Id., § 326.) Another rule is also applicable, and that is that the administration of assets is to be governed by the law of the country where the executor acts, and from which he derives his authority to collect them. (Id., § 524.) And if the question is, in what degree or proportion the representatives of the debtor should be charged with the payment from his effects, the law of the domicil of the debtor should be followed. (Id., § 526, note; *Smith* v. *Union Bank,* 5 Pet., 518, 523, 524; *Holmes* v. *Remsen,* 20 J. R., 265.) According to these general rules the application made to the surrogate that the avails of the personal property of the deceased be appropriated to the payment of the mortgage should have been denied, and the appellate court was justified in directing that the decree be modified so that the applicant first exhaust the real estate upon which it was a lien. This would not affect, injuriously, the rights of the holder of the mortgage, as after the real estate was exhausted by a foreclosure of the lien he would still be entitled to collect any deficiency which might arise upon a sale by a resort to the personal estate. Conceding the principle as claimed, that the law *rei sitæ* is to prevail in relation to all dispositions of immovable property (Story on Conflict of Laws, §§ 445, 483, 483, 555), it is not apparent how the application of this rule can affect the personal estate. Its

*situs*, for the purpose of appropriation, is in this State, and the State has, therefore, jurisdiction over it, with power to pass laws regulating the disposition of the same as if it were immovable property. (Story, *supra*, § 550.) It would not, therefore, be inconsistent for the courts of this State to adjudge as to the personal property within the State even, although it may affect real estate situated elsewhere. Such a course is not a violation of the rules of comity which exist between the several States of the United States. And while these rules may restrain the court in the exercise of its authority, they are entirely self imposed, and the courts of the several States are to determine how far they shall be regarded, and under what circumstances, and in what cases they will exercise their power. (*Dobson* v. *Pearce*, 12 N. Y., 156.) The case before us is not one where the court of South Carolina had jurisdiction of both the parties and the subject-matter, and where, as in the case last cited, the record is conclusive upon all questions litigated and decided, as the personal property was not within that State or subject to its jurisdiction. Even if it was a judgment in another State, it does not always stand upon the same footing with domestic judgments in marshaling assets of deceased persons. (*McElmoyle* v. *Cohen*, 13 Peters, 324.) The record of the judgment of the Court of Common Pleas of the State of South Carolina was not, therefore, obligatory upon the courts of this State. No other points are made which demand especial consideration. As this is an equitable action, and John Harbeson, the assignee of the mortgage, was justified in making the claim against the personal estate, we think that he ought not to be prejudiced thereby, and it is therefore proper that his costs should be paid out of the estate. The result at which we have arrived will do no injustice to him, while it will accomplish equity between all the parties.

The judgment must be affirmed, with costs of all the parties to be paid out of the estate.

All concur.

Judgment accordingly.