## HANSEL *v.* CHAPMAN.

STATUTES, EXTRA-TERRITORIAL OPERATION OF; ADMINISTRATION.

An allowance provided by the laws of a State to be made to the widow and minor children of a decedent out of his estate for their maintenance and support for twelve months after his death, is not an indebtedness enforceable in equity, in event of a deficiency of personal assets, against the realty of the decedent situated in another jurisdiction, when there is no law in such other jurisdiction that provides for any such allowance.

No. 116. Submitted December 8, 1893.—Decided February 6, 1894.

HEARING on an appeal by one of the defendants from a decree of the Supreme Court of the District of Columbia, holding an equity term, overruling exceptions to a report of the auditor in a suit to subject the real estate of a decedent's estate to the payment of his debts. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is in form a creditor's bill in equity to subject certain real estate of a decedent to the payment of debts on the ground of alleged insufficiency of personal assets; but it is in fact a contest between the widow and the heir at law of the decedent in regard to their respective rights in his estate.

Samuel S. Blackford, a clerk in one of the Departments

of the Government of the United States in the city of Washington, and previously to his employment in Washington a resident of the State of Ohio, where he retained his domicile and citizenship, and was possessed of some property, died in Washington on December 9, 1889, leaving a widow, the defendant Frances L. Blackford, and one child, a daughter, the defendant Myra H. Chapman, who was his sole heir at law.    The estate which he left consisted of one lot of ground (Lot 18, in the subdivision of Square 565) in the city of Washington; a tract of land containing about 23 acres in Stark county, in the State of Ohio; some money to the amount of $280; household furniture and effects to the estimated value of $278.50 (located in the city of Washington); and a watch and chain appraised at the place of the domicile of the decedent, in the State of Ohio, at $70.    The deceased also left a will, executed before two witnesses, by which he gave all his household furniture and effects to his wife, and also two-thirds of his entire estate, in lieu of dower; and the remaining one-third of his estate he devised to his daughter. This will was sufficient to dispose of the personalty, and also to convey the real estate situated in the State of Ohio; but it was ineffectual to convey the real estate in the city of Washington; and the whole of this latter, which seems to have been greatly the most valuable part of the estate, devolved by inheritance upon his daughter, subject to the widow's dower interest, and is now in possession of the daughter.

The will was admitted to probate at the place of the domicile in Ohio, and administration was granted there to the widow.    No personal assets, however, were found there, other than the watch and chain that have been mentioned; and these were assigned to the widow on account of the allowance which is provided by the laws of the State of Ohio to be made for the support of the widow and minor children of decedents for twelve months.    There was no administration in the District of Columbia, where the principal part of decedent's estate, both real and personal, was situated; but a copy of the will was filed here in the office of the Register

of Wills. There were some debts contracted here, most of them very small, and the whole not aggregating more than $462.06, as found by the auditor of the court in a report made by him in this case. The creditors do not seem to have been very pressing for the payment of their claims; and it was not until they were instigated thereto by the widow, that five of them, whose aggregate claims did not amount to more than $57.80, filed the bill of complaint in this cause to reach the real estate that had devolved on the heir at law, on the ground of the alleged insufficiency of the personal assets left by the deceased.

The real cause for the filing of the bill was not to enable these creditors to receive the amount of their claims, but to give opportunity to the widow to bring forward a claim of her own arising under the laws of the State of Ohio. Those laws provide that upon the death of a man leaving a widow or minor children, certain wearing apparel and household articles should be permitted to remain unappraised in the possession of the widow for the benefit of herself and the children; and further that:

" The appraisers shall also set off and allow to the widow, and children under the age of fifteen years, if any there be, or if there be no widow, then to such children, sufficient provisions or other property to support them for twelve months from the death of the decedent; and if the widow or such children have since the death of the deceased, and previous to such allowance, consumed for their support any portion of the estate, the appraisers shall take the same into consideration in determining the amount of the allowance.

" When there is not sufficient personal property, or property of a suitable kind, to set off to the widow or children, as provided in the preceding section, the appraisers shall certify what sum, or further sum in money, is necessary for the support of such widow or children.

" The appraisers shall not include in the inventory the provisions, property or money set off and allowed by them to the widow or children, but the same shall be stated in a

separate schedule, signed by them, and returned, with the inventory, into the office of the clerk of the court of common pleas.

"The court of common pleas may, on petition of the widow or òther person interested, review the allowance made to the widow or children, mentioned in the preceding section, and increase or diminish the same, and make such order in the premises as they shall deem right and proper.

   *     *     *     *     *     *     *

"Every executor and administrator shall proceed with diligence to pay the debts of the deceased, and shall apply the assets arising from the personal estate and effects, to the payment of debts in the following order: 1st. The funeral expenses, those of the last sickness, and the expenses of administration; 2d. The allowance made to the widow and children for their support for twelve months; 3d. Debts entitled to a preference under the laws of the United States; 4th. Public rates and taxes, and sums due the State for duties on sales at auction; 5th. Debts due to all other persons. ·

"And if there be not enough, after paying the said first class, to pay all the debts of any one of the other classes, all the creditors of that class shall be paid rateably in proportion to their respective debts; and no payment shall be made to creditors of any one class, until all those of a preceding class or classes, of whose claims the executor or administrator shall have had notice, shall be fully paid.

   *     *     *     *     *     *     *     *

"As soon as the executor or administrator shall ascertain that the personal estate in his hands will be insufficient to pay all the debts of the deceased, with the allowance to the widow and children for their support (for) twelve months, and the charges of administering the estate, he shall apply to the court of common pleas for authority to sell the real estate of the deceased."

Under these statutory provisions of the State of Ohio, Mrs. Frances L. Blackford, the widow of the decedent in this cause, having caused the will of her deceased husband

to be probated in that State, and having received letters testamentary thereon from the probate court of Stark county, and having also procured the appointment of appraisers by that court, thereupon presented her claim to these appraisers for a year's allowance under the law, and the appraisers set off to her as part of that allowance the watch and chain of the decedent valued at $70, as already stated; and in default of other personal property they certify that the sum of $1,753 was necesary for her support for the twelve months for which the statute sought to make provision.

This allowance was contested by Mrs. Chapman, the daughter of the deceased; but the probate court confirmed it. Mrs. Chapman appealed to the court of common pleas from the order of allowance; but that court, whether after contest or in consequence of default does not appear, dismissed the appeal. This was in May or June, 1889. But the contest between the step-mother and the step-daughter did not end here. The former, regarding the allowance made to her in Ohio as a proper claim against the real estate here, and being unable to induce Mrs. Chapman to take that view of it, instigated the creditors to institute this suit, with the undoubted purpose of using it as a means for the enforcement of her own claim; and the controversy in the case has, in fact, become a contest exclusively between these parties, the claims of the other creditors being no longer an element in the cause.

The court below referred the cause to the auditor; and the auditor, while not directly rejecting the widow's claim, refused to state it as one of the debts of the estate that should be charged against the realty in this cause. Exception was taken to his ruling; but the court overruled the exception, ratified the report, and decreed that the other debts should be paid within thirty days by Mrs. Chapman, in default of which payment any of these creditors might apply for a sale of the real estate mentioned in the bill. From this decree Mrs. Blackford appealed.

*Mr. S. S. Henkle* for the appellant:

1. The Ohio courts have construed the Ohio statute relating to a widow's allowance, as giving her a vested right of property, *Dorah* v. *Dorah*, 4 Ohio St., 292, and as a debt due her from her husband's estate. *Allen* v. *Allen*, 18 Id., 235; *Bane* v. *Wick*, 14 Id., 506. They also hold that the claim of the widow is absolute. *Collier* v. *Collier*, 3 Id., 376; *Spangler* v. *Deekes*, 39 Id., 642.

2. The widow is not here asking the courts of this District to award her an allowance under the Ohio statute. She is claiming upon a *debt due her upon a judgment of the Ohio court*. Whether she could have recovered in the courts of this District a judgment against an ancillary administrator, or the heirs for her year's allowance under the Ohio statute, if no allowance had been made by the appraisers of the personal estate of the domicile, and no action had been taken by the Ohio courts thereon, is not now before the court. If the widow's claim is not a *debt* against the estate, it is not payable out of the property of the estate anywhere. If it is a *debt* against the estate it is payable out of the property of the estate wherever found, whether at the domicile or elsewhere; first out of the personalty, and in default of that out of the realty. Says Story, Conflict of Laws, Sec. 528; *Rice* v. *Harbeson*, 63 N. Y., 500; *Taylor* v. *Todd*, 58 N. Y., 335; *Taney* v. *Duke*, 2 Atk., 446.

3. In this District any creditor may file a creditor's bill against the estate of a deceased person setting forth his claim and the deficiency of personal assets, and setting out the deceased died seized of real estate in this District and praying that it be sold for the payment of the debts. *Offutt* v. *King et al.*, 1 McA., 312; *Creswell* v. *Kennedy*, 3 McA., 78; *Ibid.*, 101 U. S., 641.

4. The courts have repeatedly intimated that where a widow is pursuing her rights under a statute similar to the Ohio law against the assets of her deceased husband's estate in a jurisdiction foreign to the domicile of the decedent, the courts of such foreign jurisdiction upon the principle of *comity* will enforce in her favor the law of the domicile.

*Medley* v. *Dunlop*, 90 N. C., 527; *Simpson* v. *Curtis*, 97 Id., 115; *Mitchell* v. *Ward*, 64 Ga., 208. See also 2 Woerner's American Law of Administration, Sec. 363, p. 767, for a discussion of these laws; also a similar discussion in *Knapp* v. *The Public Adm'r.*, 2 Bradford, (N. Y.) 258.

*Mr. John Ridout* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

The question in this case is, whether an allowance provided by the laws of a State to be made to the widow and minor children of a deceased person out of his estate for their maintenance and support for the period of twelve months after his death, can be regarded as an indebtedness that may properly be enforced, in the event of a deficiency of personal assets, against the realty of the decedent situated in another State or jurisdiction, when there is no law in such other State or jurisdiction that provides for any such allowance. It seems to be a novel question; and so far as we are advised, it has not yet received judicial determination. Cases have been cited to us from North Carolina and Georgia that have some bearing on the subject; and we are also referred to the case of *Rice* v. *Harbeson*, 63 N. Y., 493. But we do not understand that any of these cases involve the precise question now before us. We are, therefore, remitted to the consideration of general principles for our guidance.

It is a general rule of international and constitutional law, subject to qualification, that statutes can have no extra-territorial force; and in all cases of a penal character, in all criminal cases properly so called, in all civil cases for the recovery of statutory penalties, in all cases of forfeiture, as well as in cases of attempts to enforce the revenue laws of a State, the rule is rigidly applied. 2 Kent's Commentaries, p. 457; Cooley's Constitutional Limitations, Ch. 5, p. 128; *Bank* v. *Price*, 33 Md., 487. But statutory enactments that have for their purpose merely the regulation of the contract

relations of individuals, or the creation or limitation of private rights, stand upon a very different basis. It is a general rule that the validity of contracts is to be determined by the laws of the place where they are made without reference to the law of the place where they are sought to be enforced. Story's Conflict of Laws, Sec. 242.

And it has likewise been determined that, when a personal right has been created by statute and a legal liability thereby incurred, the liability is a transitory one, which may be enforced in any State where there may be had personal jurisdiction of the parties and the courts have jurisdiction of similar subject-matter—always, of course, with the proviso that the attempt to enforce such liability does not contravene the public policy of the State to whose tribunals recourse is had for such enforcement. *Dennick* v. *Railroad Co.*, 103 U. S., 11. Under which of these categories does the present case fall?

In this connection, it is manifest that a distinction must be taken between laws that affect merely personal rights and those that have reference directly or indirectly to real estate. While for some purposes personal property has a *situs* as well as realty, and for the purpose of administration, upon the death of its owner, it is subjected to the courts of the jurisdiction in which it is found mainly for the satisfaction of local debts of the decedent, yet its general legal *situs* is the place of domicile of such owner, and the *residuum* of it, after the satisfaction of local debts, is properly transmissible to the principal administrator of the estate at the place of domicile, if there is such an administrator, to be there ultimately distributed according to the law of that place. *Ennis* v. *Smith*, 14 How., 400. The main purpose of ancillary administration, if not the only one, is the payment of local debts, and not distribution of the fund. Distribution should properly be had through the principal administration at the place of domicile. But it may well be, that if for any reason a court of equity of the jurisdiction wherein is the actual *situs* of such personal property, assumes to effect a complete

administration of the fund, and to make distribution of it, there would be no impropriety in giving due effect in such distribution to the laws of the domicile of the decedent. The reason of this is quite evident. The court in that event would simply do, for the sake of convenience, that which would otherwise be done with greater cost and inconvenience at the place of domicile.

But the rule is entirely different in regard to real estate, which is in no way affected by the place of domicile of the owner, and is governed exclusively by the law of the jurisdiction in which it is situated. Except in such cases as that of *Penn* v. *Lord Baltimore*, (1 Ves. Sr., 444), in which the transfer of title to real estate may be indirectly effected by a court of equity outside of the jurisdiction, through its power of compulsory process against the persons of parties within its jurisdiction, no foreign jurisdiction can be permitted, either directly or indirectly, to make a charge or lien upon real estate, or to effect any change or modification in its ownership antagonistic to the laws of the State where the land is situated, or to create any claim against it unwarranted by those laws. Certainly, if the statute of Ohio had provided that the widow and minor children of a deceased person should be entitled for life or for a term of years to all his real estate, or to any specified proportion of it or to the possession of his principal residence for a year, and such principal residence were outside of the State, it could not be claimed with any appearance of reason that such a statute would receive any extra-territorial force whatever. Can we give any greater effect to a statute under which it is sought in this case to accomplish a similar result by indirection?

The statute of Ohio, which the appellant seeks to enforce here, provides for an assignment by the appraisers of the estate of a decedent to the widow and minor children of " sufficient provisions or other property to support them for twelve months from the death of the decedent "; and " when there is not sufficient personal property, or property of a

suitable kind, to set off, . . . the appraisers shall certify what sum, or further sum, in money, is necessary for the support of such widow or children." The purpose of this statute is apparent; and the policy which it was intended to subserve may be worthy of all praise. So far as there was property within the jurisdiction of the courts of that State which might properly be thus assigned, or against which the sum of money certified in the place of it might properly be made a charge, the question is entirely one of domestic concern for that State alone. But when it is claimed that a provision made by the State of Ohio for the well-being of its own citizens and the advancement of its own social polity, in a mode and by measures unknown to the common law, may become a charge upon real estate outside of its territorial limits, it behooves us to be cautious how far we will carry the comity of nations, or the comity of States, in the attempt to give extra-territorial force to such legislation.

It may be well to remember that, under the common law—however barbarous and unjust we may now regard that feature of it to be—real estate could not be subjected at all to the payment of the debts of a deceased person other than such as were specially charged upon it. The right of creditors to reach such real estate is the creation of statute law; and with us the foundation of the proceeding is in the act of Maryland of 1785, Ch. 72, Sec. 5, which provides that, in the event of the insufficiency of the personal assets of deceased persons " *to discharge the debts by him or her due,*" a court of equity may decree a sale of the realty. Can this be construed into an authority to decree a sale for any other purpose than to pay such debts?

In the case of *Carey* v. *Dennis*, 13 Md., 1, the Court of Appeals of Maryland said: " To authorize a decree for the sale of lands under these statutes, it is necessary that there be an indebtedness existing in the lifetime of the deceased; by which we mean, not that the alleged debt must be payable in his lifetime, but that the debt must be shown to be existing." See also *Carnan* v. *Turner*, 6 H. & J., 65; *Watkins* v.

*Worthington,* 2 Bland, 509; *Simmons* v. *Tongue,* 3 Bland, 359. And any different construction of the statute would seem to be inadmissible.

Now, such being the language and meaning of the law, it is not apparent how a court of equity can entertain jurisdiction to enforce a claim that has its inception after the death of the deceased, and is dependent entirely upon the award of appraisers and their more or less arbitrary action. The claim is, in fact, in its origin not of a pecuniary character at all, but merely a right to an assignment of provisions for a year; and it is only when there are no provisions that an equivalent in money is provided. It is very true that, when there has been a certification of the amount required in money for the support of the widow and minor children, the courts of Ohio have held that an indebtedness is created against the estate, and an indebtedness to which the law gives preference over everything else except funeral expenses and expenses of administration. Rev. Stat. of Ohio, Vol. 1, Sec. 82; *Dorah* v. *Dorah,* 4 Ohio St., 292; *Bane* v. *Wick,* 14 Ohio St., 506; *Collier* v. *Collier,* 3 Ohio St., 376. But to call a claim by the designation of an indebtedness does not constitute it such in the contemplation of our law. And even if it were conceded to be an indebtedness of the estate under our law, it is plainly not such a debt, created by the party himself while living, and having its inception before his death, as our statute would authorize to be enforced against real estate by a court of equity.

We are not unmindful of the equity of the widow resulting from the failure of her husband's will to take effect; but this is not a case in which we can enforce any such equity. We cannot deprive the heir of her estate which the law gives to her, because the widow expected to get that estate or the most of it by will, and was disappointed in her expectations. Neither do we attach any importance to the fact that the amount of the widow's allowance was fixed by the courts in Ohio after contest on the subject with the heir. That is conclusive as to the propriety of the allowance and of the

amount of it, but it does not convert that allowance into a pecuniary judgment against the heir. And even if it did, it would still be an open question whether such a judgment could be enforced in this suit.

There is also another important consideration that should not be omitted here; and that is, that there is real estate in Ohio and unadministered personal property in this District which should first be subjected to the payment of this allowance. We would not regard it as equitable in any event that the whole burden of the allowance should be thrown upon the heir; and that the widow should take under the will and by law at the same time.

Upon the whole, we are of opinion that no force can be given in this District to the law of the State of Ohio which has been invoked on behalf of the appellant; and that it would breed endless confusion in the administration of justice if real estate in this District were liable to be subjected to the arbitrary, and probably discordant charges that might be sought to be made against it by other States, and even by foreign nations, under the guise or pretense of widow's allowance, homestead exemptions, or other similar provisions, peculiarly matters of local public policy.

*We must, therefore, affirm the decree of the court below, with costs; and remand the cause to that court for such further proceedings, if any, in accordance with law as may be deemed necessary or proper.*