county of Monroe." The village of Brockport comprises five-sixths of the people in the entire town, and it was deemed advisable to have one official vested with criminal jurisdiction extending throughout the town. The primary purpose, as expressed in the title, was to improve the administration of justice in the town, and to accomplish that one office must be established and another flecked out. These two objects are germane to the main purpose, to wit, the improvement of the administration of justice; and that is the test in construing this section. Van Brunt v. Town of Flatbush, 128 N. Y. 50, 27 N. E. 973; Curtin v. Barton, supra. The court say in the case last cited (at page 513, 139 N. Y., and page 1095, 34 N. E.):

"The objection that the act contains more than one subject, and, therefore, violates article 3, § 16, of the constitution, is also untenable. The only ground upon which this point is based is that, whereas the general purpose of the act was to establish a local court, section 25 abolishes the office of justices of the peace in the city, and repeals certain provisions in relation to justices' courts. The general purpose of the act was to establish a local court in place of that held before by justices of the peace, with somewhat more extensive jurisdiction. The abolition of the office of justice of the peace and of the inferior tribunal called a 'justice's court,' was so connected with and pertinent to the whole scheme that it did not, within settled rules, constitute another or different subject."

The legislature established the police court of the village of Brockport and possessed the power to abolish it. Koch v. Mayor of New York, 152 N. Y. 72–80, 46 N. E. 170; Gould v. Mahaney, 39 App. Div. 426–430, 57 N. Y. Supp. 363. If like power was also given to the electors by section 50, c. 414, of the Laws of 1897, that did not abrogate the authority of the legislature. That body might vest in the electors of the village the power to terminate this office at will without devesting itself of like power. In any event, the exercise of the power by the legislature revoked the authority delegated to the electors. In Desmond v. Crane, 39 App. Div. 190, 57 N. Y. Supp. 266, the official was a justice of the peace, with jurisdiction co-ordinate with that of any other justice within the county, and the court was held not to be a "local court," within the constitutional definition. That is the turning point distinguishing that case from the present one, where the court confessedly is an inferior court.

The interlocutory judgment should be affirmed, and the writ dismissed, but without costs of this appeal, as the questions involved are novel.

So ordered. All concur.

---

### LITTLE FALLS NAT. BANK v. KING et al.

(Supreme Court, Appellate Division, Fourth Department. July 24, 1900.)

1. EXECUTORS AND ADMINISTRATORS — CONDITIONAL DEVISE — PAYMENT OF DEBTS—PRIORITY.

　　Under Code Civ. Proc. § 2719, providing that no preference shall be given in the payment of the debts of a deceased person over other debts in the same class, except judgments docketed against the deceased, the fact that an insolvent testator devised certain property on condition that all debts and obligations owing on account of such property should constitute a lien

on it for their payment did not entitle the holders of such obligations to priority of lien on such property over general creditors in the same class.

2. SAME—ACTION IN SURROGATE'S COURT—ACTION IN. EQUITY.

Testator devised property on condition that all obligations arising out of such property should constitute a lien on it for their payment, and plaintiffs, as holders of such obligations, began an action in equity to establish the extent and validity of their liens; but prior thereto the general creditors of deceased had commenced a suit in the surrogate's court to have the property sold in satisfaction of their judgments. *Held*, that the action in equity should be held in abeyance until the claims of all creditors, including those of the plaintiffs therein, had been proven in the surrogate's court, and that, on entry of a decree establishing such claims and providing for the sale of the property, the suit in equity should be discontinued, and the property sold pursuant to the surrogate's decree.

Appeal from trial term, Herkimer county.

Action by the Little Falls National Bank against Charles King, individually, and as executor of the last will of Seth M. Richmond, deceased, and others. From an interlocutory judgment in favor of plaintiff, defendants, except Charles King, appeal. Reversed.

Seth M. Richmond, at the time of his death, on April 27, 1895, was the president of the plaintiff, and the owner of certain property known as the "Saxony Knitting Mills," in the city of Little Falls, in said county. For some time before his death this property had been under the management of Charles King, his son-in-law. Mr. Richmond executed his last will and testament, bearing date March 30, 1894, and the same was duly admitted to probate, as a will of real and personal property, May 4, 1895, and on the 6th of May letters testamentary were issued to said King, who was named as the executor therein, conjointly with the wife of the testator, but she had died previous to her husband. By said will the testator devised and bequeathed to said King all of said knitting mills property, including the tools, machinery, merchandise, accounts, etc., forming a part of said business, vesting the title and possession thereof in said King immediately upon the death of said testator. The will, however, made the same subject to certain debts by the following provision: "This devise and bequest, however, is upon the condition that all the debts and obligations, of every name and nature, owing by said Saxony Knitting Mills Company, and which has been contracted by or on account of that branch of my business, is assumed and paid by the said Charles King; and I hereby impress a trust and lien upon my said real and personal property, hereby devised and given to said Charles King, for the payment of such debts and obligations, and make such payment of those debts a lien thereon." The residue of his property was given to his wife during life, with remainder over to his daughter, the wife of said King. The will also gave the executors a qualified power to sell the real estate, as follows: "Fourth. I hereby authorize and empower my executors, as such, whenever they shall deem it best, to sell and convey my real estate, or any part thereof, other than that which is specifically devised, and execute proper conveyances thereof." At the time of his death, Richmond owed the plaintiff $35,000, which were evidenced by promissory notes, some of which were in form against King or others, as makers, to avoid the criticism that the bank had loaned to Richmond in excess of 10 per cent. of its capital stock. The avails of these notes had been used in the knitting mills business, and, under the clause of the will, were a lien upon that property. There were other outstanding obligations against Mr. Richmond, of like character of those held by the plaintiff, aggregating about $32,000. The testator owned other property, and owed other debts, amounting to about $30,000. King assumed possession of the knitting mills property, and, as the notes held by the plaintiff severally matured, he renewed them. Some were signed by. his wife and some by himself, but all were taken in renewal of the obligations made by King, and the practice of renewing continued until King became insolvent, in 1898. As the notes were renewed from time to time, they were marked "Paid," and delivered to King, although they were subsequently, and before the commencement of this action, returned to the plaintiff. It developed that the tes-

tator, at the time of his death, was insolvent, and, his personal property proving insufficient to meet his debts, certain creditors with unsecured claims, on the 28th day of May, 1898, began a proceeding in the surrogate's court of said county, pursuant to title 5 of chapter 18 of the Code of Civil Procedure, to sell or mortgage the real estate of the testator for the payment of his debts. A citation was duly issued in accordance with the prayer of said petition, and served upon the plaintiff and the other creditors of said testator prior to the commencement of this action, and that proceeding is still pending and undetermined. This action was thereupon commenced on behalf of the plaintiff and other creditors having claims or liens upon said Saxony Knitting Mills property, to establish the same as a charge thereupon, as provided in said will, and for a decree or a judgment directing a sale of the said property primarily to pay said obligations. All the creditors were made parties defendant, but all do not appeal.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Myron G. Bonner, for appellant Richmond.
John D. Beckwith, for appellant Bonner.
Fred I. Small, for respondents.

SPRING, J. That a solvent testator can make certain of his debts a charge or lien upon a particular part of his property is clear. The indebtedness will not be limited to that precise property, if that is inadequate to pay the debts in full, but in the marshaling of the assets to meet his obligations the property specifically charged can be primarily devoted to the payment of the debts thus made a lien upon it, if the unsecured creditors insist upon that order of payment. Rice v. Harbeson, 63 N. Y. 493, 498; Redf. Prac. Surr. Cts. (3d Ed.) 554 et seq. The devise and bequest of the Saxony Knitting Mills property, charged with debts contracted in that business, was valid as between the parties interested. The beneficiary, by accepting the gift, accepted with it the burden, and, if he removed that, he held the title of his donor, unless the rights of other creditors interfered to prevent the consummation of the scheme. But he could not require the creditors whose obligations were made a charge upon this property to be restricted to it, if insufficient to pay them in full, providing he possessed other property. To carry out the intention of a testator to devote specific property to specific purposes, that course will always be adopted where it does not infringe upon the rights of creditors. While, therefore, the direction of the testator will, if possible, be complied with, even to the extent of paying one debt out of one class of property and one from another class, that plan will not be adhered to if it results in paying one debt in full, and one of the same class partially. The law is distinct in providing that, in the transmission of property of a deceased debtor to his heirs at law or devisees, it is charged with the payment of his debts. Hogan v. Kavanaugh, 138 N. Y. 417, 422, 34 N. E. 292; Jessup, Surr. Prac. 956. The rights of creditors of a decedent attach to his real estate as a statutory lien immediately upon his death. Rosseau v. Bleau, 131 N. Y. 177, 182, 30 N. E. 52; Platt v. Platt, 105 N. Y. 488, 12 N. E. 22. The order of payment is prescribed by statute, and the provision is express that "preference shall not be given in the payment of a debt over other debts of ·the same class," except

judgments docketed against the decedent. Code Civ. Proc. § 2719. If the decedent dies intestate, the title of the heir at law is subordinated to the lien of the creditors, which remains a burden for the period of three years after the issuing of the letters of administration. Id. § 2750. If the decedent leave a will, the burden remains unaffected by it, and is also superior to the legacies or devises; only, if the testator prescribes the order of payment, his wish will be observed if it does not operate to the detriment of his creditors. The principle is invoked by the appellant that a debtor, though insolvent, can secure one creditor to the exclusion of all others, providing the transaction is an honest one; relying upon Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532, Dodge v. McKechnie, 156 N. Y. 514, 51 N. E. 268, and kindred cases. The transaction is then among the living; the lien or conveyance is recorded, and is subject to inspection and scrutiny; and, as the law now stands, the transaction, within the period of four months, can be reviewed pursuant to the provisions of the national bankrupt law. Again, the statute providing that debts are a superior lien, and prescribing the order of their payment, governs in the adjustment of the decedent's property among his creditors. The will does not make an immediate transfer of his property for the benefit of any one creditor, but postpones the intended preference until after his death. The secret is with himself, and is not divulged until his death, so that there is no opportunity to attack him in the transaction. If the position contended for by the respondent is correct, the conscienceless debtor can by will make a claim of his wife or any other favored creditor superior to his funeral expenses. As I view it, such is not the purpose of the law, but the right of a testator to prefer or secure one claim to the exclusion of another ends with his life, and the statute determines the order in which his debts must be paid after his death. Had Richmond devised the Saxony Knitting Mills property to King, charged with the payment of a legacy to the wife of the devisee, the bequest would not be superior to the debts of the decedent. King might, by his own acts, have become primarily liable to the legatee, but, when rounding up the estate to meet the demands of creditors, the legacy must be deferred until the debts are liquidated; that is, the charge—the creation of the lien between the parties—is valid, but it is subsidiary to the general lien of the creditors. The testator did not intend by his will to provide for the payment of certain of his unliquidated debts in full, while leaving others of the same class to be paid in part. The value of his property was a matter of judgment, and, like every other large property holder, he overrated its worth. Had his outside property been ample to pay his debts, his gift to his son-in-law with the charge upon it would have been effectual. He believed he was solvent, and the will was made upon that assumption. He intended no preference, but expected every debt to be paid in full. We can give effect to his intention by treating his debts alike. Taking the notes of King and his wife in renewal of the obligations which were actual liabilities against the testator did not extinguish the original indebtedness. That was not the intention of the parties, but in order to keep live paper in the

bank it was necessary to have the notes renewed until the final adjustment of the affairs of the testator.

The question of practice is a troublesome one. The power of sale given to the executor is a discretionary, restrictive authority (In re Johnson, 18 App. Div. 371, 46 N. Y. Supp. 53; In re Gantert, 136 N. Y. 106, 32 N. E. 551), so that he could not, by action, be compelled to sell the real estate for the payment of the debts. The plaintiff and those similarly situated could not resort to the surrogate's court to sell or mortgage the Saxony Knitting Mills property, as it was expressly charged with payment of their debts. Code Civ. Proc. § 2749. The other creditors could institute the proceeding designed for that purpose, and the surrogate's court acquired jurisdiction by the filing of their petition, and properly exercised it. The plaintiff can maintain this action to establish the validity and extent of its lien. Hogan v. Kavanaugh, 138 N. Y. 417, 421, 34 N. E. 292; Dunning v. Dunning, 82 Hun, 467, 31 N. Y. Supp. 719. We have, therefore, the proceeding in surrogate's court as the proper tribunal, and a suit in equity likewise properly commenced; but it would be unwise to carry on the two to a sale. As all the parties are before each court, we can see no harm in adjudging and deciding in this case: (1) That the claims of the plaintiff and of the other creditors similarly situated are an express charge upon the Saxony Knitting Mills, but with no preference over the unsecured debts of the testator; (2) that this action be held in abeyance until the claims of all the creditors have been proven in the surrogate's court, including the claim of the plaintiff and others in the same category; that, upon the entry of the decree establishing said claims and decreeing a sale, this action be discontinued, without costs to either party, and that the lands of the decedent be sold, pursuant to the decree of the surrogate's court in the proceeding there pending, and the order of the sale be determined and decreed by the said court.

Judgment reversed, and new trial ordered. So ordered. All concur. The order is to be settled before Justice SPRING on two days' notice in case of disagreement.