(86 App. Div. 152.)

RICHMOND et al. v. FREEMAN'S NAT. BANK.

(Supreme Court, Appellate Division, Fourth Department.  July 7, 1903.)

1. DECEDENTS' ESTATES—PROCEEDING TO SELL REAL ESTATE—MORTGAGEE OF DEVISEE.

The devisee being a party to and bound by the decree in a proceeding to sell decedent's real estate, one taking a mortgage on the devised property from him after the filing of the petition in the proceeding is bound by the decree therein, though he was not made a party, and did not avail himself of the privilege given by Code Civ. Proc. § 2755, to make himself a party; section 2752 providing that the petition shall set forth the names of the creditors of decedent, his heirs and devisees, and every other person claiming under either of them, not applying to him, he at the time the petition was presented not having claimed as a creditor of decedent, and not having acquired a lien under the devisee; and section 2753 providing for an inquiry by the surrogate if any of the matters required to be set forth in the petition cannot be ascertained by petitioners; and section 2754 providing that if, on the inquiry, it appears to the surrogate that an essential party, including one claiming an interest in the property under a devisee, has been omitted from the petition, citation must be directed to him, not availing him, as the inquiry precedes the issuance of citation, at which time he had no interest in the property.

2. SAME—FIXTURES ADDED BY DEVISEE.

Though Code Civ. Proc. § 2749, provides for sale only of real property of which decedent died seised for payment of his debts, yet his devisee of a mill, having added thereto machines and appliances with the intent and purpose of making them permanently a part thereof, and they having been made and used as a permanent part thereof, and being adapted to the purpose thereof, they may be sold as part thereof for the benefit of decedent's creditors.

Appeal from Special Term, Herkimer County.

Action by James A. Richmond and another, as executors of Alvin Richmond, deceased, against Freeman's National Bank. From a judgment for plaintiffs, defendant appeals.  Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Charles J. Palmer, for appellant.
Myron G. Bronner, for respondents.

SPRING, J.   Plaintiffs, as executors of the last will and testament of Alvin Richmond, deceased, were creditors to the extent of over $15,000 of Seth M. Richmond, who died on the 26th day of April, 1895.   Seth M. Richmond left a last will and testament, .which was duly admitted to probate in May, 1895, and letters testamentary thereon were issued to the executor, Charles King, by the surrogate of the county of Herkimer, May 6th of that year.   Seth M. Richmond, at the time of his death, and for long before, carried on a knitting mill manufactory under the name of the Saxony Knitting Mills Company, located in Little Falls, in said county.   He devised this property, including all the goods, tools, appliances, and machinery connected with it, to said Charles King, impressed, however, with the payment of the debts and obligations contracted by said Saxony Knitting Mills Company.   King accepted this devise, carried on the business without

change of company name, and assumed the obligations which were a condition of the acceptance of the devise. He managed and operated the property as his own for over three years after the death of Richmond. The tools, machinery, and appliances used in the mill under Richmond's management were adapted and designed for the knitting mill business, and the machinery, buildings, and shafting were affixed to the freehold as a permanent part thereof. Richmond, at the time of his death, was engaged in erecting a large addition to his plant, which King completed, and installed machinery which the former had purchased. From time to time he replaced machines and appliances with others more acceptable, added new appliances and machinery as needed, all of which were adapted to the use of the business, and were affixed to the mill property as before; that is, he carried on this extensive business for three years like any owner, putting in new machinery when necessary, but keeping substantially the same general supply as when he assumed ownership. It developed that the personal property of Seth M. Richmond was largely inadequate to meet his debts, and that he was insolvent at the time of his death, and King has since become so. On the 28th of April, 1898, the proceeding was commenced by these plaintiffs, as the creditors of Richmond, to dispose of the real estate of which he died seised for the payment of his debts. This proceeding was carried on under opposition, but the decree of the Surrogate's Court directing the sale of the property to pay the debts in one form or another has been before this court, and the regularity of the proceedings has been upheld, and it has also been established that the debts created a lien on the mill property by the will had no preference over other general creditors. Little Falls National Bank v. King, 53 App. Div. 541, 65 N. Y. Supp. 1010; Matter of Richmond, 168 N. Y. 385, 61 N. E. 647 (affirming 62 App. Div. 624, 71 N. Y. Supp. 1147). The premises and property were advertised to be sold on the 25th of April, 1901, pursuant to the decree of the Surrogate's Court in the proceedings mentioned. On the 7th day of May, 1898, Charles King, who was then in possession of the mill property as devisee, executed to the appellant a mortgage in form of real estate covering the mill property, including the machinery, tools, appliances, etc. It was shortly thereafter recorded, and also filed in the town clerk's office, and renewals have since been filed from year to year in that office. During the running of the notice of sale in the surrogate's proceeding the appellant, by virtue of this chattel mortgage, seized all the machinery in the mill and the appliances and implements of every kind, and advertised them for sale for March 30, 1901. This action was thereupon commenced to restrain that sale, setting up the proceeding for the payment of the debts of Seth M. Richmond, deceased, and asserting the superiority of the liens established by the decree to the lien of the mortgage of the appellant. The crucial question, therefore, is, which has the priority, the general debts of the decedent adjudged valid by this decree or the mortgage indebtedness created by King? As to the last it appears that this mortgage was given to secure an antecedent debt of the Saxony Knitting Mills Company, but the appellant did not elect to rely on the original debt, but preferred to take its chances on the mortgage lien

from King. The plaintiffs on the trial offered in evidence the record of the proceedings in the Surrogate's Court to sell the land of which Richmond died seised, and that was the keynote to its title or claim. The appellant objected to this evidence, and now urges that the decree in that matter is not binding upon the bank, as it was not a party to the proceeding, relying upon sections 2754 and 2755 of the Code of Civil Procedure. The lien of the appellant was not created until after the special proceeding was under way, so it could not have been named in the petition originally. It was not then claiming as a creditor of Richmond. It apparently had not presented any claim against his estate. During the pendency of the proceeding it gave no sign, and did not seek to intervene in any way, preferring, perhaps, to lie by in reliance upon its mortgage, and thinking it would be in a better situation to attack the proceeding in the Surrogate's Court than if it became a party thereto.

Section 2752 of the Code of Civil Procedure sets forth the names of the persons to be contained in the petition for the disposition of decedents' real property. They include creditors of the decedent, his heirs and devisees, and "every other person claiming under them or either of them." The appellant, at the time of the presentation of the petition to the Surrogate's Court, did not come within this list. A chose in action or an indebtedness against King not yet ripened into a lien upon or interest in the property described in the petition did not entitle it to be made a party. Section 2753 provides for an "inquiry" by the surrogate in the event any of the matters necessary to be set forth cannot be ascertained by the petitioners, and this inquiry conforms to that authorized by section 2518 of the Code. Section 2754 is, in effect, that "if, upon the inquiry, it appears to the surrogate" that an essential party, including one "claiming an interest in the property under an heir or devisee," has been omitted from the petition, the citation must be directed to him. This inquiry, it will be observed, precedes the issuance of the citation, so it is of no avail to the appellant, for it had no interest in this property at that time. The subsequent section permits any person interested as described therein, although not named in the citation, "to make himself a party to the special proceeding"—a privilege of which the appellant sedulously refrained from availing itself. So the proceeding apparently was regularly commenced, so far as the bank is concerned.

In the consideration of this question it is to be noted that, as the proceeding was pending when the mortgage came into existence, the appellant acquired its lien with notice of its pendency. It derived its title from King, whose ownership was as devisee of Richmond, and was subordinate to the lien of the debts of the testator. We must, therefore, conclude that the appellant obtained its lien knowing of the pending proceeding to sell the real estate of Richmond, and elected not to be made a party thereto. King, with whom the bank is in privity, was made a party. There is no provision for recording notice of pendency of action in this proceeding. The petition was then on file in the Surrogate's Court, and the bank knew the will of Richmond was the source of King's title, and presumably made an examination of the records of that court before it acquired its

mortgage. As King is estopped by the decree in the proceeding to sell the real estate, the bank, his successor in interest, during its pendency is also bound by it. Craig v. Ward, *42 N. Y. 387; Pray v. Hegeman, 98 N. Y. 351, 361. In Wilson v. White, 109 N. Y. 59, 15 N. E. 749, 4 Am. St. Rep. 420, and kindred cases, relied upon by the appellant's counsel, persons in being, with a definite interest, unquestionably necessary parties, were omitted, and it was held that their rights were not divested by the proceedings—a principle which no one should combat. We conclude, therefore, that the decree in the proceeding to sell the real estate to pay the debts of the testator was binding and conclusive upon the appellant, and established every fact properly within its comprehension. Reich v. Cochran, 151 N. Y. 122–127, 45 N. E. 367, 37 L. R. A. 805, 56 Am. St. Rep. 607.

As a matter of fact, the correctness of this proceeding was not assailed on the trial, and no proof was presented to contradict any fact contained in the decree. The creditors of Richmond had three years following the issuing of letters testamentary in which to present a petition for the disposition of his real estate for the payment of his debts. Code, § 2750. During that period, including the pendency of any proceeding commenced within the prescribed limit, the unsecured debts of the decedent were a lien upon the real estate, and superior to the mortgage lien acquired by the appellant from King, the devisee. Platt v. Platt, 105 N. Y. 488, 497, 12 N. E. 22; Matter of Richmond, 168 N. Y. 385, 61 N. E. 647; Little Falls National Bank v. King, 53 App. Div. 541, 65 N. Y. Supp. 1010.

It is urged by the counsel for the appellant that the title to this Seth M. Richmond property vested absolutely in King, the devisee, upon the death of Richmond. That is true as to any property transmitted to an heir at law or devisee. Kingsland v. Murray, 133 N. Y. 170, 30 N. E. 845. But the title, however unqualified in form, is subject to the payment of the debts of the decedent, if his personal assets are insufficient for that purpose. As was said in Hogan v. Kavanaugh et al., 138 N. Y. 417, 34 N. E. 292, at page 422, 138 N. Y., page 293, 34 N. E.:

"The claims of creditors of a deceased person are preferred to those of his legatees or devisees, for the only interest in the testator's property that he could transmit to them was what remained after the payment of his just debts."

King, during his occupancy, and by virtue of his title, added to the machinery and appliances, and changed the fixtures and implements from time to time, as has already been stated. The proceeding for the disposition of the real estate of a decedent for the payment of his debts pertains only to "real property of which a decedent died seised." Code, § 2749. It is insisted that some of this property belonged to King, not to Richmond. The referee has found that all these machines, appliances, etc., were added by King "with the intent and purpose of making all of them so put in permanently a part of said mill buildings and freehold," and that they were made and used as "a permanent part" thereof, and that they were all adapted to the manufacture of knit goods, as was conceded on the

trial, which was the only purpose to which said mill and plant were devoted. King, therefore, with his precarious title, and in spite of the large indebtedness of Richmond, chose to run the property as his own, and expend money for making changes and additions. These consisted in the main of machinery, belting, and shafting, which were permanently affixed to the mill property, and their removal would result in serious impairment to its value. The other appliances were all essential to the operation of the mill, and were especially adapted to the manufacture of knit goods. King put them in the mill to be a part of the permanent structure, and he is responsible for the condition now existing. It is too late for him, or one in privity with him, to assert that they are not fixtures, and are personal property. Two of the familiar tests by which the character of property affixed to the freehold is gauged are the purpose of the annexation and the intent inducing it (McRea v. Central National Bank of Troy, 66 N. Y. 489), and, measured by these standards, these fixtures are real estate. The devisee continued in the undisturbed enjoyment of this property for three years, deriving whatever benefits accrued from its operation. If he may, by reason of the alterations made, or the substitution of machinery for that which came into his possession, obtain absolute title, as against the creditors of Richmond, of whatever he added to the plant, he may be able to rifle it of its contents, and materially lessen its value, and deprive the creditors of the property which is primarily for their benefit. The loose property about the mill, not extensive in amount or value, derived its worth from its adaptation to the chief purpose of the plant. There was no appreciable augmentation of this property from that which King received with the mill, and what has been said in regard to substituting one machine for another applies to the implements or appliances, although intrinsically personal property. The judgment should be affirmed, with costs.

Judgment affirmed, with costs and disbursements. All concur.